## Case No. 295.

AMERICAN COTTON–TIE SUPPLY CO. v. McCREADY et al.

[17 Blatchf. 291;[1] 4 Ban. & A. 588; 17 O. G. 565; 8 Reporter, 811.]

Circuit Court, S. D. New York. Nov. 11, 1879.

PATENTS FOR INVENTIONS — INFRINGEMENT — ENJOINING TRANSPORTATION OF INFRINGING ARTICLE.

1. Cotton ties made in infringement of patents owned by the plaintiff were being shipped from New York to ports in the southern part of the United States, by steamers belonging to a corporation of which the defendants were the managing officers, for persons whose names they refused to disclose to the plaintiff, the ties being shipped to be sold at such ports for use: *Held*, that such carrying of such ties by said steamers was an infringement of the patents, and that such officers would be restrained by an injunction from doing so.

[Cited in New York Bung & Bushing Co. v. Hoffman, 9 Fed. 201; Bate Refrigerating Co. v. Gillett, 30 Fed. 684; Hatch v. Hall, Id. 614.]

2. Under section 4921 of the Revised Statutes, the court has power to enjoin the infringement of a patent, independently of the award of any other relief thereon.

[In equity. Bill by the American Cotton-Tie Supply Company against McCready, as president, and Stanford, as secretary and general freight agent, of the Old Dominion Steamship Company, for an injunction restraining defendants from transporting certain infringements of plaintiff's patents Nos. 23,291, and 31,252, for other parties. Injunction granted.][2]

S. A. Duncan, for plaintiff.
F. D. Sturges, for defendants.

BLATCHFORD, Circuit Judge. This bill is founded on two patents. One of them, No. 23,291, was granted to George Brodie, May 22d, 1859, for 14 years from March 22d, 1859, for "improvements in metallic bands for baling," and was re-issued to him April 27th, 1869, as re-issue No. 3,405, and was extended for seven years from March 22d, 1873, and was re-issued March 25th, 1873, as re-issue No. 5,333. The other patent, No. 31,252, was granted to James J. McComb, January 29th, 1861, for 14 years from that day, for an "improvement in iron ties for cotton bales," and was extended for seven years from January 29th, 1875. The plaintiff, a Louisiana corporation, is the owner of the patents. The validity of the patents and the right of the plaintiff to be protected by preliminary injunctions against infringements are not in question in this suit.

The charge of infringement made in the bill is, that the defendants, without license, have entered upon, and are now engaged in infringing upon, the rights of the plaintiff, by aiding and abetting various other persons, not licensees of the plaintiff, in making, selling and using iron cotton ties which embody the said patented inventions. The defendant McCready is the president of the Old Dominion Steamship Company, a Delaware corporation, the defendant Stanford is the secretary and general freight agent of the said corporation, and the third defendant is the assistant general freight agent of the said corporation. The bill alleges, that the defendants, as officers and agents of the said corporation, have been for some time past

---

[1][Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 588; and here republished by permission.]

[2][For other suits involving the same patents, see note to American Cotton-Tie Supply Co. v. Bullard, Case No. 294.]

and now are actively engaged, without the license or authority of the plaintiff, and against the plaintiff's protest, in transporting cotton ties, embodying the said inventions, from the port of New York to various points in the south, and particularly to Norfolk, Petersburg and Richmond, well knowing that such ties are intended for sale and use in the cotton districts and in the cotton ports of the south; that the plaintiff has already suffered damage from such acts of the defendants; and that the defendants have been duly notified of the plaintiff's rights in the premises, and requested to desist from such acts, but refuse to do so, except as they shall be restrained therefrom by the order of this court. The bill prays that the defendants may account for profits and damages, and may be enjoined from making, using or vending the said inventions and from aiding others in so doing.

The bill is accompanied by an affidavit made by Frederic Cook, an agent of the plaintiff, on the 13th of October, 1879, setting forth that the said corporation has been engaged, without the license or authority of the plaintiff, in transporting from the city of New York to Norfolk and other places in the state of Virginia, iron cotton ties embodying the inventions covered by the 3d, 4th, and 5th claims of the Brodie patent, and the claim of the McComb patent; that, within the past two weeks, he has seen upon the pier of said corporation, various lots of said ties which he carefully examined and is sure were not of the manufacture of the plaintiff, but were unlicensed and infringing ties; that he has been unable to learn from the officers of said corporation who the actual shippers of the said infringing ties have been, although he has caused proper enquiry to that end to be made, the officers of the corporation declining to furnish the information, on the ground that the rules of the corporation forbid it; that he believes that other persons than those who have been restrained in suits brought by the plaintiff, in this court, against Bullard & Wheeler and John S. Long, V. Pugsley and G. P. Chapman, Earle & Perkins and Moses & Cohen, are making such shipments by the said line; that, on the 10th of October, 1879, there was received at the New York office of the plaintiff, a letter from its Norfolk agent, C. Phillips, enclosing a copy of a part of the manifest of the Old Dominion, one of the steamships of the said corporation, which lately arrived from New York at Norfolk, and which showed the shipment on that vessel of six lots of cotton ties consigned to different parties, none of whom are agents of the plaintiff; that such ties were described in said letter as arrow ties; that the writer of the letter went on to state that the large quantity of such ties brought into his territory from New York was seriously affecting his trade, and that, unless the further introduction of such ties could be prevented, his sales would not be one-half of

what they would otherwise be; that a letter of similar import was written within a few days, and received from the Petersburg agents of the plaintiff, in which complaint is made of the large number of competing ties brought into the Petersburg market from New York; that the counsel for the plaintiff has caused the attention of the officers of the said steamship company to be called to the injury that is thus being inflicted upon the plaintiff, and has served upon said company and one or more of the defendants herein a copy of the restraining orders and injunctions which have been issued in the above-named suits, but that, while the officers of said company acknowledge their obligation to refrain from transporting ties for the special parties defendant in said suits, they do not feel that they are at liberty to decline taking similar freights from other persons; that the counsel for the plaintiff has caused to be represented to the officers of said company the difficulty which the plaintiff now finds in protecting itself against shipments of infringing ties by unknown parties, and that it may, therefore, become necessary to apply to this court, for an order restraining the said company generally from acting as carriers for parties who may offer such ties for shipment from the port of New York, and that the officers of said company have signified not only their willingness to yield a ready obedience to any such order, if obtained, but a disposition to abstain from any attempt to embarrass the plaintiff in securing such order; that he greatly fears that unless the said company be so restrained forthwith and before a motion for an injunction can be heard in the due course of practice, infringers will succeed in removing their ties to points in the south and outside of the jurisdiction of the court; that, should they succeed in this, it will necessarily result in irreparable damage to the plaintiff; and that this is the most critical period of the cotton tie season, and a few thousand bundles of infringing ties thrown into the market at this juncture will almost inevitably unsettle prices and greatly disturb the trade, and thus inflict an injury upon the owners of the patents for which there is no adequate remedy.

On the bill and such affidavit an order was made by this court, on the 13th of October, 1879, ordering that from and after the service of the writ of subpoena in this cause, and a notice of motion for an injunction pendente lite, to be heard on October 24th, 1879, with copies of the papers on which said motion is to be made, "the said defendants, and each of them, their agents, servants, attorneys, workmen and employees, and each of them, be and stand in all respects restrained and prohibited from receiving at the wharves or docks of the said Old Dominion Steamship Company, or from placing on board said company's steamships, or from shipping or transporting from any point or points within the jurisdiction of this court, under any pretext

whatever, any cotton ties containing the features of invention, or any of them, which form the subject of the third, fourth and fifth claims of the said patent No. 5,333, or the claim of the said patent No. 31,252, and particularly ties composed of a flat band of iron and an open-slotted link or buckle, having a single central opening for receiving the band, unless such ties be offered for shipment or transportation by the said American Cotton-Tie Supply Company, or its duly authorized agents, and that they and each of them do stand so restrained and prohibited until the hearing of such motion, and until the same shall be by the court determined and decided."

The motion has been heard. It is opposed on the part of the defendants, by an answer to the bill and by affidavits. The defendant McCready, in an affidavit, says, that he is president of the Old Dominion Steamship Company, a corporation created under and by virtue of the laws of Delaware, and engaged in the business, as common carrier, of carrying and transporting freight and passengers between the ports of New York, Norfolk and Richmond, and having its general office in the city of New York; that said company owns many large steamships, by which it carries on its said business, which sail from the port of New York six times a week, laden with large cargoes of all kinds of merchandise; that said company receives upon its wharf, at pier 43, North river, from a very large number of persons, all kinds and descriptions of freight, in all quantities; that he is not acquainted with any of the details of such transportation, so far as the names of shippers and the different kinds of merchandise are concerned, his duties being confined to the general management of the business; that it would not be practicable for him to inform himself each day as to such details; that he has no knowledge whatever as to the claim of the plaintiff herein to the patents specified in the bill, nor to the articles claimed to be manufactured in accordance therewith; that it would be impossible for him, as president of said company, to inform himself, each day, or at any time, whether the articles received by the said company for shipment, are shipped by persons licensed by the plaintiff, or whether the articles have been properly purchased by the shippers from the plaintiff, or whether the articles themselves are infringements of the plaintiff's manufacture, or different from the same; that, with regard to the shipments heretofore made, he has been entirely ignorant in the respects above set forth, except so far as he has been informed by persons acting for the plaintiff, that the articles were infringements; that the business of said company is very large, and it would be impossible, in the proper conduct of the same, for the said company to inform itself of all the facts with regard to the articles shipped, to ascertain whether or not they were in-

fringements of the plaintiff's manufacture; that it would necessitate the employment of experts to examine each and every one of the articles, out of many tons thereof, to determine whether or not they were infringements; that it would be necessary to employ persons to make enquiries as to the shippers of the articles, to learn, if possible, whether they had the right to ship the same; that all of this would seriously impede and delay the business of the said company, to its great and irreparable injury; that he has in no way infringed upon the rights of the plaintiff; that he has not aided or abetted any persons, whether licensees of the plaintiff or otherwise, in making, selling or using the articles claimed by the plaintiff; that he has no knowledge, nor any means of ascertaining, whether or not the said company is shipping or transporting cotton ties embodying the plaintiff's patented invention, shipped by persons without authority or license; and that neither he nor the other officers of the said company would hesitate to obey any proper order of this court, but the said company and its officers do most earnestly oppose the making of any order which would inflict any serious injury upon said company, as the order prayed for herein inevitably would.

The defendants Stanford and Guillauden, in a joint affidavit, state that Stanford is secretary and general freight agent of the Old Dominion Steamship Company, and that Guillauden is assistant general freight agent of said company; that they have read the affidavit of the defendant McCready, and the same is true in every respect; that the defendants are entirely ignorant of the matters in the bill and affidavit of the plaintiff set forth, with relation to the letters patent and the plaintiff's rights and acts thereunder, as alleged in said bill and affidavit, nor have they any means of informing themselves as to such matters; that they deny any individual connection with, or relation to, the acts charged against them in said bill and affidavit, and allege, that their only connection, directly or indirectly, with such matters is as officers and agents of the Old Dominion Steamship Company; that said company acts, in relation to the transportation of the articles alleged to be infringements of the plaintiff's invention, only as a common carrier for others, and that it has no other interest or connection with said articles; that the deponents are employed entirely in the office of said company; that they have never seen any of said articles; and that they have no power or authority to refuse to transport the same.

The defendant Stanford, in a separate affidavit, states that he is secretary and general freight agent of the Old Dominion Steamship Company; that, since the restraining order in this suit was issued, cotton ties have been offered to said company for shipment; that,

by reason of said order, and the inability of the officers and agents of said company to ascertain and determine as to whether or not the said ties were infringements of the plaintiff's alleged inventions, or whether or not the persons offering the same were rightfully authorized to ship them, the said company was compelled to refuse to receive or transport the same; that the said ties were subsequently offered to another company, a competitor of the Old Dominion Steamship Company, which received and transported the same; that, by reason of being placed in such a position, the said company is sustaining and will continue to sustain very serious injury, not only with regard to the freight on said ties, but with regard to other freight; that such injury will amount to upwards of one thousand dollars a month directly, in addition to its liability to action by the parties offering said ties; and that the competitors of said company are thus greatly benefitted at its expense and to its great injury.

It is contended for the defendants, that the steamship company, as it acts solely in the capacity of common carrier of these ties, does not come within the meaning of the statute, as an infringer of the patents; that it has nothing to do with the rights of the plaintiff or the invasion of those rights by others; that it does not use, or aid others in using, the ties, because such use cannot be had until after transportation and delivery; that the company, by transporting the ties, does not sell them to others to be used, or aid in selling them to others to be used; that, as a common carrier, the company is bound to receive and carry all goods offered by any person; that it would be against public policy to restrain the company; that it would impede its business and inflict injury on the whole community; that the suit is improperly brought against the defendants and should be brought against the company; that the defendants are only officers of the company, with distinct duties, and have no control over the goods and no power to refuse to receive them; that the company ought not to be compelled, at its own expense, to protect the plaintiff's business; and that it owes no duty to the plaintiff, to answer for the diligence which the plaintiff ought to use in protection of its own interests.

It is entirely clear that the owners of infringing and unlicensed cotton ties, who are causing them to be transported by the vessels of the Old Dominion Steamship Company, are sending them for sale and use, and are employing said company and its officers as agents and servants in promoting and effecting such sale and use. It would seem, on principle, that there ought to be no difficulty in restraining by injunction all persons, whether officers of a corporation or not, who are aiding in the promotion of the infringing sale and use, whether such persons would be liable for profits or damages or not. It has

been so held by this court. Goodyear v. Phelps, [Case No. 5,581;] Poppenhusen v. Falke, [Id. 11,279.]

In Hunt v. Maniere, 34 Law J. Ch. (N. S.) pt. 1, p. 142, a wharfinger received notice that certain wine, deposited at his wharf was marked with a fraudulent imitation of a trade-mark, and that the owner of the trade-mark was about to apply to the court of chancery for an injunction to prevent the wine from going on the market. After the injunction had been granted, but before the wharfinger had notice that it had been granted, he refused to deliver the goods to their owner. It was held by the master of the rolls, and, on appeal, by the lords justices, that he was justified, in equity, in such refusal, and that the owner of the goods would be restrained from suing him at law for a wrongful conversion of the goods. The master of the rolls observed, that the plaintiff acted rightly; and that, being in the possession of goods which he knew to be a fraudulent and spurious imitation of the manufacture or growth of other persons, and being informed that an injunction would be obtained, and being notified not to deliver the goods, he would have acted culpably if he had parted with the goods.

In Upmann v. Elkan, 7 Ch. App. 130, affirming the decision of the master of the rolls, (L. R. 12 Eq. 140,) a firm of forwarding agents in London received from correspondents abroad several boxes of cigars bearing forged brands, which were to be delivered to several persons in England. On application by the makers whose brand had been forged, the agents gave information as to the consignors, and offered either to send back the cigars, or to erase the brands. On a bill for an injunction, filed by the makers whose brands were forged, it was held that the fact that the agents were merely carriers was no defence to the suit, but that, as they had given sufficient information and had offered to erase the brands, they were not to pay costs. The defendants were forwarding agents, to whom the goods had been consigned to pay the duty on them and forward them to persons named. They were to be paid for so doing, but their profit did not arise from the sale of the goods. The master of the rolls said: "It does not, in my opinion, make any difference whether the goods are sent to a person who does not deal in the article consigned, and whose duty is simply to distribute the goods to other persons, or whether the goods are sent to him as consignee, for his own purposes. In either case they are sent to the dock to be at his disposal, and without his signature the goods cannot be disposed of. It will not do for him to say, as he does in this case, 'I know nothing about the goods sent. I do not know whether they have any, or, if any, what brand on them, or whose it is.' It is his duty to know this, and, if he receives notice that they bear a fraudulent

imitation of another man's brand, he ought to ascertain this as speedily as possible after such notice, and to take the proper and necessary steps to prevent their being disposed of in that state. It may be, that, without notice, and when he sees the trade-mark, he does not know that it belongs to another. If so, he may deal with them innocently. But, as soon as he is informed of the fact, he should act at once, so as not to be, in any event, either from wilful or from accidental ignorance, made a party to the fraud committed by another; and, when he ascertains the fact, he should at once inform his correspondent abroad. If it be argued, that this imposes upon him serious inconvenience, and a duty which, by taking the order for goods, he never undertook, this may be admitted to be true; but it is only what would be the case in the event of the importation of prohibited articles, and it arises from the circumstance that he has not taken sufficient care to ascertain what sort of persons the correspondents are for whom he consents to act as agent." Lord Hatherley, on the appeal, said: "It has been argued, that the plaintiffs were not entitled to an injunction against the defendants, who had been guilty of no offence, being merely carriers receiving goods, which, though fraudulently marked, were not for their own use, nor to be sold by them for their own benefit, but were received merely for the purpose of transmitting them to the persons to whom they were consigned. I cannot conceive a doctrine more dangerous or mischievous, or more fatal to the authority of the court with respect to trade-marks. If that argument prevailed, any persons, being abroad, as was the case in this instance, and minded to commit frauds upon an English trade-mark, could easily do so by sending their different consignments together to persons in the position of the defendants, who appear to be respectable agents and warehousemen, thereby committing an injury in a manner most convenient for themselves, and very mischievous to the person entitled to the benefit of the trade-marks."

In Orr v. Diaper. 4 Ch. Div. 92, it was held that a bill would lie against ship owners who had shipped goods bearing counterfeits of the plaintiff's trade-marks, for a discovery of the names of the consignors from whom the goods had been received.

The doctrine of these cases in regard to trade-marks is entirely applicable to the case of the infringement of a patent. As the defendants have refused to disclose the names of the infringing shippers of ties, the plaintiff is without remedy by injunction, in respect of the infringing ties which the defendant's company transports in its vessels, unless it can obtain an injunction in this suit. It clearly ought to have such a remedy.

No authority is cited by the defendants in which it is held that an injunction will not lie in a case like the present. The cases cited for the defendants are cases where it has been held that workmen and employees will not be held liable for profits and damages, in a suit for the infringement of a patent. Under section 4921 of the Revised Statutes, the authority of this court, in a case arising under the patent laws, of which it has jurisdiction, to grant an injunction, according to the course and principles of courts of equity, to prevent the violation of any right secured by a patent, is entirely independent of the award of any other relief in the same suit.

The officers of the steamship company must have the same power to refuse to accept infringing cotton ties that they have to accept them. The defendant McCready does not disclaim such power to refuse. The cases of Lightner v. Kimball, [Case No. 8,345,] and Heaton v. Quintard, [Id. 6,-311,] are distinguishable from the present case.

As to the suggestion of hardship to the defendants and to their company, there can be no difficulty in so framing the order of injunction, that, with the cooperation of the agents of the plaintiff, there will be but little practical difficulty in securing obedience to the injunction without serious practical inconvenience to the defendants. The defendants' company will be deprived of no more carrying trade in respect to infringing ties, than they would be deprived of if the shippers of such ties were enjoined, and it must be presumed that they would be enjoined, if their names were known. The defendants' company could have caused such names to have been disclosed, on enquiry, but it did not. The allegation that the information was asked and refused is not denied. The injunction asked for is granted.