### STANDARD OIL CO. v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1893.)

#### No. 16.

1 PATENTS FOR INVENTIONS—COMBINATION—OIL CARS.
Letters patent No. 216,506, issued June 17, 1879, to M. Campbell Brown, for an improvement in cars, consisting in a division of the car into two or more parts, some of which shall be constructed as tanks for carrying oil, while others are fitted for ordinary merchandise, the object being to carry such merchandise on the return trip, and thus obviate the necessity of hauling empty oil cars for long distances, are void for want of patentable combination. 48 Fed. Rep. 109, affirmed.

2. SAME—SUIT FOR INFRINGEMENT—PARTIES.
In a suit against a railroad company for infringing a patent upon oil cars, defendant disclaimed ownership of the alleged infringing cars, and of any interest in the patent, and averred that it simply transported the cars under the obligations of a common carrier. *Held*, that the true owner was entitled to become a party, and defend the suit, upon filing a petition for leave to intervene, setting up its rights.

Appeal from the Circuit Court of the United States for the Northern District of California.

In Equity. Suit by the Standard Oil Company against the Southern Pacific Company and Whittier, Fuller & Co. for infringement of a patent for an improvement in oil cars. The circuit court entered a decree dismissing the bill. 48 Fed. Rep. 109. Complainant appeals. Affirmed.

Langhorne & Miller and Pillsbury, Blanding & Hayne, for appellant.

John L. Boone, for appellee Whittier, Fuller & Co.

Before McKENNA and GILBERT, Circuit Judges, and MORROW, District Judge.

MORROW, District Judge. This is a bill in equity, filed in the circuit court for the northern district of California, charging infringement of letters patent No. 216,506, for an improvement in oil cars, granted to M. Campbell Brown, June 17, 1879, and assigned to complainant. The original bill was filed November 4, 1889, against the Southern Pacific Company alone. The purpose of the bill was to restrain the railroad company from using or transferring in any way any railroad cars embracing the improvement described in complainant's patent. On filing the bill, a bond in the sum of $5,000 was given by the complainant, as required by the court, and thereupon a preliminary injunction was issued. November 26, 1889,

the complainant proceeded to take testimony in support of the bill. On the 2d day of December, 1889, the Southern Pacific Company filed an answer admitting the averments of the bill, and alleging, among other things, as follows:

"Avers that it does not now, and never did, own any of the cars alleged by complainant to be an infringement upon complainant's patent, and that it does not now, and never did, own any interest therein; avers that it has not in its possession, or under its control, any such cars. And for a further, separate, and distinct answer and defense, defendant avers that it is a common carrier, for hire; that, as such, it is accustomed to receive and transport over its railroad cars belonging to other corporations and individuals; that, under the laws of the United States, it is required to receive all cars, without discrimination, and transport the same; that it has not the means for discovering or ascertaining whether cars offered to it for transportation are infringements on patent rights or not; that, immediately upon receipt of notice from complainant, this defendant notified the owners of said cars complained of that it had received such notice, and that it would transport no more of such cars unless secured against all losses and damages by said owners; that said security has not been given; and that defendant has neither received nor transported any of such cars since the date of complainant's notice."

December 5, 1889, Whittier, Fuller & Co. filed a petition entitled "Petition for Interpleader," in which it is alleged, among other things:

"That said firm of Whittier, Fuller & Co. is now, and has been for about thirty years last past, engaged in conducting and carrying on a large wholesale and retail business in paints and oils in the city and county of San Francisco, state aforesaid; that the magnitude of its business renders it necessary for said firm to ship into this state, from the eastern states, large quantities of petroleum and other oils; that in order to make such shipments, and to supply its said trade with oils, your petitioners have had constructed, at a large expense, several cars which are especially adapted for containing, storing, and transporting petroleum and other oils in bulk; that its custom has been to have said cars filled with oils in the eastern states, and the cars so filled were delivered as freight to one of the transcontinental lines of railway to be transported and delivered in San Francisco; that during the month of October, 1889, your petitioner was notified by the Standard Oil Company, an eastern corporation, that it claimed that your petitioner's said cars were an infringement upon a certain United States letters patent which was issued to one M. Campbell Brown on the 17th day of June, 1879, and which said Standard Oil Company claimed had been assigned to, and was the property of, said corporation; that your petitioner immediately took legal advice in the matter, and was advised, after careful investigation, by competent authority, that no infringement upon said letters patent existed; that on the 2d day of December, 1889, your petitioner was notified that two of its said oil cars had been delivered by the Atchison, Topeka & Santa Fe Railroad Company, at Mojave, in the state of California, to the Southern Pacific Company, for carriage to San Francisco, Cal., but that said Southern Pacific Company refused to haul or deliver said cars; that, in the course of correspondence with the said officials of said Southern Pacific Company, your petitioner learned that an action in equity had been commenced in this court by said Standard Oil Company against the Southern Pacific Company for infringing upon the said letters patent issued to said M. Campbell Brown, and claimed to be owned by said Standard Oil Company. But this was the first information your petitioner had of the existence of such suit. * * *

"Your petitioner further represents to your honors that said defendant, the Southern Pacific Company, has not now, and never has had, any interest whatever in said cars, further than to haul them from place to place in the capacity of a common carrier; that said cars belong to, and are the property of, your petitioner; that your petitioner is fearful that the said suit now pending, above referred to, is a collusive suit between said complainant and respondent, and that it is the intention of said parties to collusively obtain a decree of this

honorable court adjudging and declaring your petitioner's said cars to be an infringement upon said letters patent issued to said Brown, and claimed as being the property of said Standard Oil Company, without permitting your petitioner to defend its rights in the premises; that your petitioner is ready, able, and willing to defend its right to make, use, and maintain said cars; that your petitioner is desirous of making answer to the complaint filed herein, and to produce proof on the issues made in said case; that, unless your petitioner be granted the privilege of interpleading in said suit, it is liable to suffer irreparable damage and loss, and will be deprived of the use of its property, without being permitted to make any defense in said action whatever. Wherefore, your petitioner prays that said cause be opened, and that your petitioner be permitted to interplead in said action by filing an answer to the matters set forth and charged against said cars in the bill of complaint herein, and that it be permitted to produce proof in support of the matters. it may set forth in its said answer."

To this petition the defendant filed an answer December 7, 1889, admitting that it had no interest in the patent in question, or in the cars of either the Standard Oil Company or Whittier, Fuller & Co., and consenting that the petitioners might defend the suit in their own names, with their own counsel, and at their own expense, and that the prayer of the petitioners to interplead might be granted. December 9, 1889, the complainant interposed a demurrer to the petition; and on that day the court ordered that complainant should within 10 days file an amended bill of complaint, making Whittier, Fuller & Co. parties respondent, and that complainant should thereupon file a bond in the sum of $20,000 to indemnify the respondents, or either of them, for all damages they, or either of them, might sustain by reason of the preliminary injunction. Pursuant to this order the complainant, on the 19th day of December, 1889, filed an amended bill, which it appears did not comply with the order of the court, and on motion it was struck from the files; and on December 31, 1889, the court made the further order that the complainant, on or before Friday, the 3d day of January, 1890, should file a second amended bill of complaint, making respondents Whittier, Fuller & Co. respondents in fact, and charging said Whittier, Fuller & Co., jointly with the Southern Pacific Company, with having infringed upon the letters patent sued on, and demanding an injunction against all of said respondents. It was further ordered that a new injunction should be issued, running against both of said respondents, and that upon the filing of the new injunction the injunction theretofore issued against the Southern Pacific Company should be dissolved. It was further ordered that a bond in the sum of $20,000, to be approved by the judge of the court, should be filed by said complainant on or before said Friday, the 3d day of January, 1890, indemnifying both of said respondents against the effect of said injunction, in case the same should have been wrongfully issued. Pursuant to this last order the complainant, on January 3, 1890, filed a second amended complaint, and a bond on injunction in the sum of $20,000. It is claimed by counsel, in their brief, that the court erred in making the orders of December 9, 1889, and December 31, 1889, whereby it was ordered that complainant file an amended bill of complaint, making Whittier, Fuller & Co. parties respondent, and compelling complainant to take out an injunction against Whittier, Fuller & Co., and to execute a bond

in the sum of $20,000 to indemnify the respondents from all damages they might sustain by reason of the injunction. To the second amended bill, Whittier, Fuller & Co. interposed a demurrer, which was overruled. Standard Oil Co. v. Southern Pac. Co., 42 Fed. Rep. 295. Thereafter, the case being at issue upon the answers of the defendants and the replications of the complainant, testimony was taken, and upon the final hearing a decree was entered, dismissing the bill, on the grounds that the patent sued on was a mere aggregation of devices, and not a patentable combination. Standard Oil Co. v. Southern Pac. R. Co., 48 Fed. Rep. 109. From this decree the complainant appealed.

We would perhaps be justified, under rule 11 of this court, in disregarding the claim of error, as it is not contained in the assignment of error in the transcript of record, but it will probably assist to a better understanding of the case to notice the contention of the complainant in this behalf.

It is said by counsel for appellant, in support of this claim of error, that the original bill was brought against the Southern Pacific Company alone, to restrain it from using, as a common carrier, upon the railroads operated by it, any and all cars which infringed upon complainant's patent. It was not aimed against Whittier, Fuller & Co., or against any particular owner or patentee of cars. Its object and scope were simply to enjoin the railroad company from using cars which would amount to an infringement of complainant's patent. It may be admitted that the complainant had a right of action against the Southern Pacific Company, upon the facts stated in the bill, but does it follow that Whittier, Fuller & Co. were not also proper parties to the action? The Southern Pacific Company, in its answer, disclaimed all ownership or interest in the cars alleged to be an infringement of complainant's patent, and even denied that the cars were in its possession, or under its control; but it averred that its relation to the cars was that of a common carrier for hire, required by the laws of the United States to receive all cars, without discrimination, and transport the same; that it did not have the means for discovering or ascertaining whether cars offered it for transportation were infringements or not, but it had notified the owners of the cars of complainant's request to desist from the use of the invention. By this answer the railroad company disclaimed any interest in the controversy as to whether the cars received by it for transportation infringed upon complainant's patent or not, but it pointed to the owners of the cars as the real parties in interest. Whittier, Fuller & Co., in their petition, alleged that they were engaged in conducting and carrying on a large wholesale and retail business in paints and oils in the city and county of San Francisco; that the magnitude of their business rendered it necessary for them to ship to California, from the eastern states, large quantities of petroleum and other oils; that in order to make such shipments, and to supply their trade with oils, they had constructed, at a large expense, several cars especially adapted for containing, storing, and transporting petroleum and other oils in bulk; that these cars belonged to them, and were their property, and were the cars claimed to be infringements upon complainant's patent; and accordingly they

asked permission to defend the action.  Clearly, they had a beneficial interest in the suit.  The cars had been constructed, and were being used, by them, for transporting oil to California over at least a portion of the railway owned and controlled by the Southern Pacific Company.  A decree in favor of the complainant, and against the railroad company, would necessarily affect that use, and perhaps destroy the value of the cars altogether.  They were therefore entitled to be made defendants in the suit, whatever might be the title of their petition.

In the case of Supply Co. v. McCready, 17 Blatchf. 291, the bill alleged that cotton ties made in infringement of patents owned by the plaintiff were being shipped from New York to ports in the southern part of the United States, by steamers belonging to a corporation of which the defendants were the managing officers, for persons whose names they refused to disclose to the plaintiff; the ties being shipped to be sold at such ports for use.  It was held that carrying of such ties by the steamer was an infringement of the patents, and that such officers would be restrained by an injunction from so doing, but the court found as a fact that the officers of the steamship company were acting as the agents and servants of the owners of the infringing cotton ties, in promoting and effecting such sale and use.  The defendants had not confined themselves to the business of a carrier, but had actually engaged in promoting the sale and use of the infringing article.  The case is, however, of interest upon another point.  The court, in answering a suggestion that the injunction would be a hardship upon the steamship company, observed:

"The defendant's company will be deprived of no more carrying trade in respect to infringing ties than they would be deprived of if the shippers of such ties were enjoined, and it must be presumed that they would be enjoined if their names were known.  The defendant company could have caused such names to have been disclosed on inquiry, but it did not.  The allegation that the information was asked and refused is not denied."

The action was therefore sustained against the defendants, as officers of the common carrier—First, because they acted as the agent and servant of the shipper of the infringing cotton ties; and, second, because they refused to disclose the name of such shipper.  Had the name of the shipper been known, he would undoubtedly have been made a party defendant.  In the present case the shipper is not only known, but he asks to be made a defendant upon a showing that he owns and uses the cars alleged to be infringements of complainant's patent.  We find no difficulty, under these circumstances, in determining that Whittier, Fuller & Co. were properly admitted as defendants in the action, and that the court had authority, under its equitable jurisdiction, to require a new bond of the complainant, to meet the new conditions of the case.

In the transcript of record a number of errors are assigned, stating in different forms the claims that the court erred in decreeing that the claim of the patent sued on was a mere aggregation of devices, and not a patentable combination.  The patent is for an "improvement in oil cars."  The specification and claim are as follows:

"My invention relates to cars, and especially to that class of cars designed for transporting merchandise and oil or other liquids; and it consists in the parts and combination of parts hereinafter described and claimed, whereby oils or other liquids may be safely transported in the same car with miscellaneous merchandise. * * * The object, as briefly above stated, of my device, is to produce an improved form of car for the transportation of oils and liquids in bulk, and which shall also be adapted for the transportation of ordinary merchandise on roads where a load of oil or liquid cannot be obtained on return trip, thus obviating the necessity of hauling empty tank cars over long distances, as is now commonly done; and to this end the construction of the ordinary freight car is modified as follows: The car space is divided into two or more compartments; but, for the purpose of the present specification, we will suppose it to be divided into three. The central compartment, as shown in the drawings, would embrace about two thirds of the entire length of the car, and is designed and adapted for ordinary storage, and for this purpose may be constructed in any proper manner. The two end compartments occupy each about one sixth of the entire length of the car, are located in the ends thereof, over the trucks, and are designed and constructed to contain metallic tanks, * * * which tanks are adapted for safely containing and transporting oil or other liquid. * * * I am aware that the several features embodied in my improvement are not independently new, and I restrict the invention to the specific combination of parts set forth in the claim."

The claim is as follows:

"What I claim is a car subdivided into two or more compartments, each end compartment containing an oil tank, said tank constructed with an inclined or self-drawing bottom, and resting upon a floor formed in counterpart thereto; said tank also having a tapering or inclined top, with a filling opening placed at or near its highest point, and in line with a filling opening in the car top,—and there being a removable partition separating said tank from the adjacent compartment,—all combined substantially as set forth."

In discussing the question of difference between a mere aggregation and a patentable combination, Judge Hawley, in the circuit court, applies the principles declared by the supreme court to the present case in the following language:

"Is this invention a mere aggregation, or is it a patentable combination? What is the distinction between mere aggregation and a patentable combination? A combination of well-known separate elements, each of which, when combined, operates separately, and in its old way, and in which no new result is produced which cannot be assigned to the independent action of one or the other of the separate elements, is an aggregation of parts, merely, and is not patentable. But if to adapt the several elements to each other, in order to effect their co-operation in one organization, demands the use of means without the range of ordinary mechanical skill, then the invention of such means to affect the mutual arrangement of the parts would be patentable. The parts need not act simultaneously, if they act unitedly to produce a common result. It is sufficient if all the devices co-operate with respect to the work to be done, and in furtherance thereof, although each device may perform its own particular function only." 48 Fed. Rep. 109.

In support of this doctrine of aggregation, as distinguished from a patentable combination, the case of Hailes v. Van Wormer, 20 Wall. 353, is cited, as follows:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known, and in common use, before the combination was made. But the results must be the product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without

the production of something novel, is not invention. No one, by bringing together several old devices, without producing a new and novel result, the joint product of the elements of the combination, and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in the combination."

## Also, the following from Reckendorfer v. Faber, 92 U. S. 357:

"The combination, to be patentable, must produce a different force or effect or result in the combined forces or processes from that given by their separate parts. There must be a new result produced by their union. If not so, it is only an aggregation of separate elements."

## And the following from Pickering v. McCullough, 104 U. S. 318:

"In a patentable combination of old elements, all the constituents must so enter it as that each qualifies every other. * * * It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions."

### The opinion proceeds:

"Numerous other authorities might be cited substantially to the same effect. The law is well settled, the principles clearly defined. The dividing line between mere aggregation and patentable combinations is well established. Every case must fall upon one side or the other. No case stands directly on the pivotal line. But the facts are often of such a character as to make it difficult to determine upon which side of the border line the case should be classed. This difficulty arises in the application of the facts to the principles of the law so frequently announced by the supreme court of the United States. * * * The several features embodied in complainant's improvement are admitted not to be independently new. The contention is that new and useful results are reached that were not hitherto attainable under the prior state of the art. The result claimed to be new is the cheaper transportation of oil in bulk over long hauls. That is, by the combined use of the patented car, complainant is enabled to save the expense of $95 hitherto paid for the expense of the return of an empty car. It is not claimed that the carrying of oil one way co-operates directly with the performance of carrying dry merchandise the other way, but the point relied upon is that the two co-operate directly in the performance of carrying merchandise both ways, thereby producing a common result, viz. a reduction of the cost of transportation of oils by successive acts performed in different parts of the service of the car; this result being, as before stated, in saving the dead loss of hauling empty cars one way. If this contention is sound, then the patent must be maintained. Is it tenable? I am of opinion that it is not. The construction of this patent as contended for by complainant would, in my judgment, be extending the principle of patentability of inventions beyond the rules laid down by the supreme court of the United States in its recent decisions upon this subject. The patentee admits that the several features in his improvement 'are not independently new.' Upon the hearing prior patents were introduced which embodied the general feature of carrying oils or liquid and dry freight at the same time, or 'for liquid freight in one direction, and dry freight in the other.' Do the elements of the car and of the oil tank, combined, so co-operate as to produce a new result by their joint union? Successive action of old parts, where they all relate to each other, and all work to a common end to perform a common result, if the result is new, are patentable, but in all cases it must be a result which is due to the successive action of these parts."

After referring to the case of Reckendorfer v. Faber, and the illustrations there given of articles in combination which produce new results, and amount to patentable combinations, the opinion concludes, upon this feature of the case, as follows:

· "In this case there is no joint operation or effect in the construction of a railway car and the oil tank combined which is in any manner due from the simultaneous or successive action of the two as combined. It is a mere aggregation of old elements, producing no new result by the combination."

We have carefully examined the authorities cited upon this question, and, applying the principles as determined by the courts, we find that Judge Hawley has correctly interpreted the law applicable to the facts in this case. Decree affirmed.