JOHN R. WILLIAMS CO. et al. v. MILLER, DU BRUL & PETERS MFG. CO.

(Circuit Court, S. D. New York. February 4, 1901.)

1. PATENTS—VALIDITY—INSERTION OF NEW CLAIM IN APPLICATION.
The fact that a new claim is inserted in an application for a patent by the attorneys for the applicant, without any new oath, does not render the patent invalid as to such claim, where it was within the invention described in the specification.

2. SAME—PRESUMPTIONS—EFFECT OF DECISION OF PATENT OFFICE.
The decision of the patent office in interference proceedings as to priority of invention in favor of the later of two applicants, while not conclusive on the courts, overcomes the presumption in favor of the other inventor arising from priority of his application, and the presumption of validity attaches to the patent granted on the later application.

3. SAME—CONTRIBUTORY INFRINGEMENT—PROCESS PATENT.
The selling of machines to the trade, designed to be used in employing a patented process, constitutes contributory infringement.[1]

4. SAME—PROCESS OF WRAPPING CIGARS.
The Hammerstein patent, No. 261,849, for a machine for use in wrapping cigars, and method of using it, is void for lack of patentable novelty as to claim 2, which covers the machine,—similar machines having been in prior use in related arts,—but is valid as to claim 1, which describes the process by which the machine is applied to the art of cigar making. Claim 1 also held infringed.

5. SAME—MACHINE FOR CUTTING CIGAR WRAPPERS.
The Hammerstein patent, No. 315,408, for a machine for cutting cigar wrappers, used in connection with the machine for wrapping cigars described in patent No. 261,849 to the same patentee, discloses patentable invention, was not anticipated, and is valid. Claims 1 and 3 also held infringed.

In Equity. Suit for infringement of patent. On final hearing.

Charles C. Gill and Livingston Gifford, for plaintiffs.
E. M. Marble and Wood & Wood, for defendant.

WHEELER, District Judge. This suit is brought upon two patents granted to Oscar Hammerstein,—one, No. 261,849, dated August 1, 1882, for a machine, and method of using it, in folding the wrappers about the fillers of cigars, and the other, No. 315,408, dated April 7, 1885, for a machine, in connection with the other, for cutting cigar wrappers. The specification of the first states that:

"Heretofore it has been customary for cigar makers to apply the wrappers by first rolling them around the lower portion of the cigars, and then, when the point of the cigar was nearly reached, cutting the unrolled end of the wrapper to its proper form, and rolling it around the point of the cigar. The cutting of the wrapper, being by hand, was never very exact, so that usually

---

[1] Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 479.

a projecting portion remained, that had to be bitten or cut off by the cigar maker. In this act of applying, the wrappers were frequently exposed to such strain that they were torn to pieces, and considerable loss resulted from this cause alone. My invention consists in perforating the table on which the wrapper is placed, and in combining it with a fan or air suction or propelling apparatus, which through the perforations of the table will suck the wrapper tightly to its place, and hold it immediately before and while it is being put around the cigar. The same system of invention is applicable to the covering of cigarettes."

In the drawings the table is marked A; air holes in the table, a; a conduit below the table leading to the air holes, C; and the air-propelling fan, D. The claims of that patent in question are:

"(1) The process herein described of applying a cigar wrapper to and around the filler, which process consists in holding the wrapper, by air pressure, flat on a perforated table, and in thereupon gradually rolling it around the filler, the unrolled portion being meanwhile held to the table by air pressure, substantially as specified. (2) The table, A, having holes, a, disposed in an area of the form of the wrapper of a cigar or cigarette, in combination with the conduit, C, and air-propelling apparatus, D, all arranged to hold the entire wrapper on said table by suction, substantially as specified."

The specification of the other states that:

"The invention consists first in combining with a perforated suction plate and a suction pipe a cutting blade, so that the wrapper, while the leaf is held by suction or air pressure to said plate, may be cut out of the leaf. The invention also consists in combining with the continuous cutting blade, which has the general outline of the wrapper, an inner cutter for making a curved incision into the head of the wrapper, thereby improving its condition."

In the drawings the continuous cutting blade is marked A; the perforated plate, which is the air-hole space of the table of the other patent, B; the suction pipe, which is the conduit of the other, E; and a hand roller passing over the wrapper leaf, pressing it against the cutting edge of the blade, F. The claims of this patent in question are for:

"(1) The continuous cutting blade, A, combined with the perforated plate, B, and with the suction pipe, E, substantially as described, for creating suction in the space bounded by the blade, A, and plate, B, as and for the purpose specified. (3) The continuous cutting blade, A, combined with the plate, B, which is placed therein beneath the cutting edge, and with the roller, F, and suction pipe, E; the plate, B, being constructed to permit the air to be drawn from above it to the space below it, as set forth."

The first claim of the first patent is not for the principle that nature abhors a vacuum, and will press with air to fill it, nor for the mechanical operation of the machine, but for the use of both by the hands of the operator in folding the wrapper about the filler to make a cigar. This method of performing this operation seems to be patentable as an art, under the statutes, if new. Walk. Pat. § 14. If holding thin paper in place by pneumatic pressure, to be operated upon for making paper bags or cigarettes, was this process, it would not be new. But a tobacco leaf fit for a cigar wrapper is of much more delicate fiber than paper for bags or cigarettes; and holding it in place as it receives the filler, and is progressively folded about that as it is rolled along the perforated table and shaped by hand, is a very different operation from any in which paper had been confined by pneumatic force. The invention of it does not appear to have been anticipated by anything set up in defense.

No claim for a process was in the application for this patent when it was filed. One was afterwards inserted by the attorneys, without any new oath, and through amendments it became this one. It is objected to as invalid on this account, and Eagleton Mfg. Co. v. West, Bradley & Carey Mfg. Co., 111 U. S. 490, 4 Sup. Ct. 593, 28 L. Ed. 493, is relied upon for this contention. But in this case the specification as well as the claim was enlarged by the attorneys after the death of the inventor so as to include an invention not before described, and that was what defeated the patent. The changing of claims for inventions described in the specification does not enlarge the scope of the application, and seems to be well within the authority of attorneys to prosecute it, and according to the constant practice of the patent office.

The mechanical claim is to be considered with reference to the part belonging solely to its mechanism in performing the operation. That mechanism consists of the perforated table, the air conduit, and the air propeller. Each of these was old, separately, and in such an arrangement. There was nothing new about either, except making the perforated part of the table in the form of a cigar wrapper, which would be entirely obvious as to so much of that as is a requirement. The mechanism does not operate in any new way, nor produce any new result. The only novelty about it was bringing it into use in this new connection. The distinction as to patentability in putting old devices to new uses in more or less related arts is clearly set out in Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275. These arts are so nearly related that bringing these old devices into this use does not appear to be a new invention. This claim, therefore, appears to be invalid for want of novelty, according to that distinction.

The validity and scope of the first and third claims of the other patent are to be considered with reference to the prior uses of pneumatic force for holding thin paper in place to be cut or folded, as before mentioned, and also other patents for cigar making; the most notable among these being No. 137,524, dated April 8, 1873, and granted to Remsen Appleby for an improvement in apparatus for cutting cigar wrappers, in which the leaf was to be held in place upon a wrapper-shaped cutter by an adjustable hinged gage, and No. 340,180, dated April 20, 1886, and granted to John R. Williams, on an application filed February 10, 1883, which was before the application for this patent, for a machine for cutting cigar wrappers. The Appleby patent is not, and could not well be, relied upon as an anticipation of this, for it did not in any way involve air pressure; but these claims are argued to be mere mechanical aggregations of the devices of Appleby, and of the first of these patents. The wrapper-shaped cutter and roller of Appleby, and the suction of the other patent, were brought into these claims, and adapted to each other for working together. The gage of Appleby was dispensed with, and his cutter fitted to the suction for the operation of his roller. This seems to have been more than a mere mechanical aggregation, and to have amounted to a new combination involving an exercise of inventive skill. An interference was declared between Williams'

application and Hammerstein's, which was decided by the examiner of interferences and the board of examiners in chief in favor of Hammerstein. This patent was thereupon issued to Hammerstein as assignor; and one expressly disclaiming the invention described in this, to Williams. This invention is not shown, nor attempted to be, to have been known to and used by Williams prior to the invention by Hammerstein, otherwise than by showing priority of application, which failed for want of priority of invention. This decision is not conclusive here as to this priority, but it disposed of the presumption arising from priority of application involved there, and left nothing to overthrow the presumption of validity attaching to this patent as granted. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657; Walk. Pat. § 142.

The defendant is shown to have made and sold, and to be making and selling, for use, cigar wrapper cutting machines constructed and operated according to patent No. 594,835, dated November 30, 1897, and granted to Pietro Veraci. This patent is not for a new process or machine in avoidance of those of the patents in suit, but for improvements upon them. The specification says:

"My invention is an improvement on those cigar wrapper cutting machines in which a leaf is laid on a hollow cutting die and wrapper-supporting plate, over which a roller is reciprocated to cut the wrapper out of the leaf; the wrapper being held in position by air pressure while it is applied by the operator to the cigar bunch."

It further describes a perforated wrapper-supporting plate, F, surrounded by a cutting edge on which the leaf is placed, and a wrapper is cut by a roller passing over it while it is held down by suction, and then says, "The wrapper remains held to the wrapper-supporting plate, F, until it is rolled around the cigar bunch by the operator, when the valve closes," after saying before that "when the leaf has been cut, and the operator rolls therein the cigar bunch, the leaf, in rolling up, uncovers the plate." The defendant's catalogue shows a machine containing these devices, and says:

"The 'suction' system of rolling cigars is already familiar to the trade, being in use in the very largest and best-known factories of the United States. The advantages of this system over hand work have been conclusively demonstrated. * * * The cut on opposite page shows design of table which we manufacture. We sell them outright and in any quantity."

The catalogue is said for the defendant not to be sufficient evidence of details of the machines to make out infringement. They are, however, admissions of sales of such machines for use, and competent, so far as they go, for showing participation by such sales in infringement of the process claim of the first of the patents in suit. The making of the machines might not be such a use of the process as to be an infringement of that claim, but the selling of them for use would be such a concurrence in the practicing of the patented process that the use of them would involve as to amount to a partaking as principal in the infringement by it. American Diamond Rock Boring Co. v. Sullivan Mach. Co., 14 Blatchf. 119, Fed. Cas. No. 298; Supply Co. v. McCready, 17 Blatchf. 291, Fed. Cas. No. 295. This evidence also shows that the defendant makes and sells machines containing the combinations of the first and third

claims of the second patent. They are improved upon by being added to, but do not appear to be changed themselves in their parts or mode of operation. This taking of the invention to improve upon is as well an infringement as taking without the additions would be. And the sale for use of the same machine infringes pro tanto both patents, whether the inventions co-act or not. Decree for plaintiffs as to the first claim of the first patent, and the first and third of the other.