# EAGLETON MANUFACTURING COMPANY *v.* WEST, BRADLEY & CAREY MANUFACTURING COMPANY & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued April 15th and 16th, 1884.—Decided May 5th, 1884.

*Patent.*

Letters patent No. 122,001, granted to the Eagleton Manufacturing Company, December 19th, 1871, for an "improvement in japanned furniture springs," as the alleged invention of J. J. Eagleton, *held* to be invalid, and the following points ruled :

(1.) The patent is for steel furniture springs protected by japan, and tempered by the heat used in baking on the japan ;

(2.) Such springs, so protected and tempered, were known and used by various persons named in the answer, before the date of the patent ;

(3.) The specification which accompanied the original application by Eagleton, July 6th, 1868, did not set forth the discovery that moderate heat, such as may be applied in japanning, will impart temper to the springs, but set forth merely the protection of the springs by japan ;

(4.) Not only does the evidence fail to show that Eagleton, who died in February, 1870, in fact made and used, prior to such other persons the invention covered by the patent as issued, but it shows that he did not, and that, probably, it never came to his knowledge while he lived ;

(5.) Japanning, by itself, was not patentable, and Eagleton, in the specification which he signed and swore to, did not describe any mode of japanning which would temper or strengthen the steel, and did not even mention that

the japan was to be applied with heat, and it now appears that the temper and strength are produced by the heat altogether, and not at all by the japan.

(6.) The only invention to which the application and oath of Eagleton were referable was that of merely japanning steel furniture springs ; the authority given to his attorneys was only to amend that application, and ended at his death ; the amendments made were not mere amplifications of what had been in the application before ; the patent was granted upon them without any new oath by the administratrix ; and this defence is not required, by statute, to be specifically set forth in the answer, and can be availed of under the issues raised by the pleadings, as showing that the plaintiff has no valid patent.

The case is stated in the opinion of the court.

*Mr. F. H. Betts* for appellant.

*Mr. W. C. Witter* for appellees.

Mr. Justice Blatchford delivered the opinion of the court.

This suit was brought in the Circuit Court of the United States for the Southern District of New York, on letters patent No. 122,001, granted to the plaintiff, The Eagleton Manufacturing Company, December 19th, 1871, for an "improvement in japanned furniture springs." The patent contains these recitals : "Whereas J. J. Eagleton of New York, New York (Sarah N. Eagleton, administratrix), has presented to the Commissioner of Patents a petition praying for the grant of letters patent for an alleged new and useful improvement in japanned furniture springs (she having assigned her right, title and interest in said improvement, as administratrix, to Eagleton Manufacturing Company, of same place), a description of which invention is contained in the specification of which a copy is hereto annexed and made a part hereof, and has complied with the various requirements of law in such cases made and provided ; and whereas, upon due examination made, the said claimant is adjudged to be justly entitled to a patent under the law."  The specification of the patent is as follows :

" Be it known, that I, J. Joseph Eagleton, of New York, in the county of New York, and State of New York, have invented a new and useful improvement in furniture springs ; and I do hereby

declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to make and use the same, reference being had to the accompanying drawing, forming part of this specification, in which the drawing represents a furniture spring provided, according to my improvement, with a japan covering. [The helical springs heretofore employed

for furniture-seats, mattresses, &c., have generally been made of iron wire, brass, or copper ; but steel wire, although a far superior material for such springs, has not been commonly employed, owing

to the lack of means for protecting such springs from corrosion and the lack of means for imparting to them the necessary stiffness or temper. The object of this invention is to produce steel furniture springs that shall not only be protected from corrosion, but shall also be suitably tempered and stiffened. The drawing is a perspective view of one of my improved springs. In carrying out my invention, I provide a suitable quantity of steel wire of the size of which the spring is to be made, and this I wind upon blocks in the usual manner, giving the wound spring the ordinary pressing or set. I then provide a suitable bath containing the ordinary preparation of japan varnish, in which I dip or place the springs, so as to cover them with japan. They are then removed and strung on wires, or put on pegs, to drain, after which they are placed in a baking oven of the ordinary kind suitable for the baking of japanned articles, in which oven the springs are subjected to a temperature sufficient to bake and harden the japan ; after which the springs are removed from the oven and allowed to cool, when they are ready for use. The treatment of the springs in this manner imparts to them two important and valuable qualities : First, the springs, when they come from the oven and are cooled, have firmly attached to their exterior surface a water-proof covering or coating, which perfectly protects them from corrosion and fits them for service in all kinds of climates, hot or cold, dry or damp. Second, the springs thus prepared are strengthened or stiffened, the application of heat to the springs in the oven having the apparent effect to temper the steel of which they are composed, making the springs stronger and more elastic. As between a steel spring not japanned, as I have described, and a steel spring japanned, as described, both being of the same size and made from the same piece of wire, the japanned spring will be found to be much stronger than the spring not japanned. The spring not japanned is, therefore, not only lacking in strength, but it is also practically useless, for want of a protecting covering. But the improved article, produced substantially in the manner I have described, forms a strong and durable spring, and no article like it has, so far as I am aware, ever been known or used. While I do not claim broadly, the making of furniture springs of steel wire, I wish it to be understood I do not limit or confine myself to the exact order or method of operation here described, in producing my im-

proved springs, as the order or method may be varied without departing from my invention."]

There are two claims, namely: "1. The method, herein described, of strengthening metal springs. 2. As an improved article of manufacture, a spring made substantially as herein described."

Eagleton, as inventor, filed in the Patent Office, on the 6th of July, 1868, a petition for a patent for an "improvement in furniture springs," accompanied by an affidavit, a specification, a drawing, and a model, and the proper fee, and, in the petition, appointed Munn & Co. "to act as his attorneys in presenting the application and making all such alterations and amendments as may be required, and to sign his name to the drawings." The affidavit, that Eagleton verily believed himself to be "the original and first inventor of the within described improvement in furniture springs," was sworn to by him June 26th, 1868. The specification then filed was as follows: "Be it known that I, J. Joseph Eagleton, of New York, in the county of New York, and State of New York, have invented a new and useful improvement in furniture springs, and I do hereby declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to make and use the same, reference being had to the accompanying dra ings forming part of this specification, in which the drawing represents a furniture spring provided, according to my improvement, with a japan covering. [The nature of this invention relates to improvements in helical furniture springs, such as are used for mattresses, sofas, &c., the object of which is to provide steel springs which will not be so liable to injury from corrosion as those now in use. It consists in providing steel springs, such as are commonly used, with a japan outer covering. Steel springs, as is well known, possess in a much higher degree the requisite qualities of strength, flexibility, and elasticity than iron, copper, or brass, and, by reason of the susceptibility of steel to be tempered, and thereby regulated to any degree of elasticity, it is much more preferable to use; but, owing to its great liability to de-

terioration from corrosion, it is but little used for such springs. To obviate this difficulty, I propose to provide steel springs coated with japan, which I find to be of great advantage in resisting the corrosive action of the atmosphere on the steel, and whereby steel springs are made very much more durable than any other. To some extent, the same purpose may be accomplished by coating the spring with tin or zinc or other similar metal, which will not suffer by corrosion, but the process of coating with such metals requires the use of acids for cleaning and preparing the steel, which, adhering to the steel, and being to some extent inclosed within the said coating and maintained in contact with the steel, have an injurious effect thereon. I have, therefore, found that when the springs are protected by japanning they are much more durable and give more satisfactory results, the same being applied by the common japanning process. Having thus described my invention, I claim as new, and desire to secure by letters patent, japanned furniture springs, as a new article of manufacture, substantially as and for the purpose described."]

The application was rejected on the 10th of July, 1868, the following reasons being assigned by the examiner: "The application above referred to has been examined, and is rejected for want of patentable invention. The japanning of metal is an old process, and no invention is shown in applying it to a spring for a bed bottom. It is a common right, possessed by every one, to galvanize, paint or japan any metal that he may use." The specification was returned to the applicant. Eagleton died in February, 1870. On December 29th, 1870, the application for the patent was renewed on the same specification, it being returned to the Patent Office, and received there January 4th, 1871, and a reconsideration requested, the letter being signed "J. J. Eagleton, per Munn & Co., attorneys." Nothing further appears to have been done until, on October 19th, 1871, the specification filed was amended by erasing the part above put in brackets, and substituting what is in brackets in the specification of the patent as issued, and by substituting the following as the claim: "Having thus described my invention, I claim as new, and desire to secure by letters patent, as

an improved article of manufacture, a japanned steel furniture spring, made substantially as set forth." On the 20th of October, 1871, the application was rejected, the examiner saying: "The above named application has been examined on the amended specification, but no reason can be seen for changing the action of the Office in rejecting the same July 10th, 1868. The applicant is referred to the Commissioner's decision in the case of Osborn and Drayton, November 5th, 1870. The application is again rejected." On the 31st of October, 1871, Munn & Co. wrote thus to the Office: "In the matter of the application of J. J. Eagleton, for letters patent for furniture springs, filed July 6th, 1868, we respectfully request a specific reference, on which the rejection of the case may be based, as provided in Rule 34 of Office Rules of Practice." On November 3d, 1871, this answer was returned: "The applicant's letter of the 31st of October has been duly considered. His application has been twice rejected for want of patentable invention, and not for want of novelty. Sufficient reasons, it was deemed, were given for its rejection, and that Rule 34 of Office Rules of Practice is not applicable in the case. The process of japanning is so old that it is not probable that any person ever before applied for a patent for it. Furniture springs have been painted, galvanized, varnished, and probably japanned, as they are found coated with material that would require a chemical analysis to determine of what it was composed. The former action is affirmed." On the 7th of November, 1871, by a letter to the Office, signed "J. J. Eagleton, per Munn & Co., attorneys," the specification was amended by erasing the claim last presented and inserting, in lieu thereof, the two claims which are in the patent as issued. The application was again examined, and, on November 17th, 1871, the patent was ordered to issue. The specification annexed to the patent purports to be signed "J. J. Eagleton," and also to be signed by the two witnesses who signed the specification originally filed.

The bill avers that Eagleton, having invented the improvement, died intestate, and Sarah N. Eagleton was appointed his administratrix, and the invention was assigned to the plaintiff, and afterwards the administratrix applied for a patent, and

complied with all the necessary conditions and requirements of the statute, and the patent was issued.    The answer states, that, as to whether or not the patent was applied for or issued in the manner and with the formalities set forth in the bill, the defendants leave the plaintiff to proof thereof.    It denies that Eagleton was the first inventor of what is patented by the patent, and avers that, before the time of any invention thereof by Eagleton, it was known to and used by various persons named, at various places mentioned; that the description in the patent is obscure and not sufficient to enable one acquainted with the art to use the alleged process therein attempted to be described, and for that reason the patent is void; that the description and specification of the patent are not in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it appertains to temper steel wire, but, if the description and specification be followed out, there will not be produced a tempered steel furniture spring; that, if the desired effect be to temper or strengthen a steel furniture spring, then, for the purpose of deceiving the public, the description and specification filed by Eagleton were made to contain less than the whole truth relative to his invention or discovery, and the patent is, therefore, null and void; that any representation contained in the patent or the specification, that treating a spring as described therein tempers it, is false; and that treating a steel furniture spring as described in the patent does not temper it.    Infringement, also, is denied.

The Circuit Court dismissed the bill, assigning its reasons in an opinion which is found in 18 Blatchford, 218.    The court decided the following points : (1.) The patent is for steel furniture springs protected by japan, and tempered by the heat used in baking on the japan.    (2.) Such springs, so protected and tempered, were known and used by various persons named in the answer, before the date of the patent.    (3.) The specification which accompanied the original application did not set forth the discovery that moderate heat, such as may be applied in japanning, will impart temper to the springs, but set forth merely the protection of the springs by japan.    (4.) Not only does the evidence fail to show that Eagleton in fact made and

used, prior to such other persons, the invention covered by the patent as issued, but it shows that he did not, and that, probably, it never came to his knowledge while he lived. (5.) Japanning, by itself, was not patentable, and Eagleton, in the specification which he signed and swore to, did not describe any mode of japanning which would temper or strengthen the steel, and did not even mention that the japan was to be applied with heat, and it now appears that the temper and strength are produced by the heat altogether, and not at all by the japan. (6.) The only invention to which the application and oath of Eagleton were referable was that of merely japanning steel furniture springs; the authority given to his attorneys was only to amend that application, and ended at his death; the amendments made were not mere amplifications of what had been in the application before; the patent was granted upon them without any new oath by the administratrix; and this defence is not required by statute to be specifically set forth in the answer, and can be availed of under the issues raised by the pleadings, as showing that the plaintiff has no valid patent.

We are satisfied with the conclusions arrived at by the Circuit Court, and with the reasons assigned by it therefor. The copy of the file wrapper and its contents in the matter of the patent, from the Patent Office, giving the history of the application, was put in evidence by the plaintiff. It shows beyond doubt, that there was no suggestion, in the specification signed and sworn to by Eagleton, of the invention described in the amendment filed October 19th, 1871. Prior to that time the process practised by the defendants, which is the process described in letters patent No. 116,266, granted to Alanson Cary, June 27th, 1871, for an "improvement in modes of tempering springs," was invented and put in use; and there is no sufficient evidence that Eagleton had any knowledge, prior to the invention by Cary of the Cary process, of either that process or of the process described in the patent in suit. The plaintiff's patent shows, on its face, that it was granted on the petition of Eagleton, and the allegation of the bill that the patent was granted on the application of his administratrix is not established. In view of the entire change in the specification, as to

the invention described, the patent, to be valid, should have been granted on an application made and sworn to by the administratrix. (Act of July 8th, 1870, ch. 230, § 34, 16 Stat. 202.) The specification, as issued, bears the signature of Eagleton and not of the administratrix, and it is sufficiently shown that the patent was granted on the application and oath of Eagleton, and for an invention which he never made. The renewed application of December 29th, 1870, was made in the name of Eagleton, though he was dead. The letter of Munn & Co. of October 31st, 1871, treats the matter under consideration as the application of Eagleton, though the amendment of October 19th, 1871, had been made. The amendment of November 7th, 1871, was not only made in the name of Eagleton, but the letter of that date, in his name, to the office, states that what is amended is the specification in his application. Although at some time before the issuing of the patent evidence was produced to the office of the appointment of the administratrix and of her assignment to the Eagleton Company, yet it is very clearly shown that there was no application or oath by the administratrix.

> *The decree of the Circuit Court is affirmed.*