## CARY and others v. WOLFF and others.

*(Circuit Court, S. D. New York. February 7, 1885.)*

1. PATENTS FOR INVENTIONS—PATENTABILITY—SPIRAL SPRINGS—USE OF HEAT.
   Patent No. 116,266, dated June 27, 1871, and granted to Alanson Cary, *held* a patentable invention.

2. SAME—INFRINGEMENT.
   Patent No. 116,266 *held* infringed by defendants by their use of the Cary process for the same purpose, and with the same result. although they use a higher degree of heat.

In Equity.

*Robert H. Duncan* and *Samuel A. Duncan*, for orators.

*Charles D. Adams* and *Frederick H. Betts*, for defendants.

WHEELER, J. This suit is brought upon letters patent No. 116,-266, dated June 27, 1871, and granted to the orator Cary, for an improvement in mode of tempering springs. The specification sets forth that the invention relates to spiral springs usually made in conical form, of steel wire, used in upholstering chairs, sofas, and for bed-bottoms; describes the manner of making them by coiling and forcing hard-drawn steel wire to the proper shape, whereby the outer portion of the wire is stretched, and the inner portion crushed, and its strength, elasticity, and durability greatly reduced; states the discovery that subjecting them to a degree of heat known as spring-temper heat, about 600 deg., more or less, for about eight minutes, will restore the wire to its normal condition by producing a complete homogeneity of the metal, and greatly increases their value. The claim is for the method of tempering furniture or other coiled springs substantially as described. The defendants subject such springs, after being coiled, to a degree of heat beyond the range of what is known among artisans in tempering steel as spring-temper heat, and beyond 600 deg., for the purpose of restoring the elasticity and strength of the wire to its normal condition. They set up want of patentable novelty in the invention, and deny infringement of the patent, as defenses to the suit.

If the patent was for the process merely of tempering steel by merely subjecting it to heat it would apparently be anticipated in several ways. That process was known to experts and artisans and described with particularity in books before the date of this invention. The process of the patent does not merely add temper as a quality to steel which did not have it before; it restores the lost strength and elasticity of the wire consequent to the displacement of the particles of which it is composed by the process of making it into springs. The discovery was that the application of heat would effect that restoration, which is a different thing from tempering. Subjection to heat for casting and tempering, and to produce malleability and for various other purposes, was well enough known, but it was not known for this purpose until it was applied to this kind of springs in their peculiarly weakened state. The discovery was of a new application of an old process which produces a new and highly useful result. Wire bells for clocks were made to have sonorous properties by the same process, in kind, but for a different purpose and with a different result. What seems to be the nearest to this is the method of shaping and spacing the coils of hair balance springs for marine clocks by coiling the wire into a mould of the required shape, called a snail, and subjecting it to heat while there in shape to make it retain its place. But there was no displacement of the particles, of which the wire was composed, by distortion, and the process was not a restoration of any lost quality, but a mere shaping of the wire into the article desired. That the discovery of this effect of restoration by this mode was new hardly admits of question upon the evidence. Experts called by the defendants admit that they did not believe the result would be produced until they saw the process tried in connection with this litigation. And that this production of a new and useful result by a new application of a process, although old, is patentable seems to be clear. *Crane* v. *Price*, 1 Webst. Pat. Cas. 393; *Smith* v. *Goodyear Co.* 93 U. S. 486; *Loom Co.* v. *Higgins*, 105 U. S. 580.

It is claimed that the application of this process to the very purpose of restoring this kind of springs was known to and made by J. Joseph Eagleton prior to the invention by Cary, upon which knowledge the application for letters patent No. 122,001, as involved in *Eagleton Manuf'g Co.* v. *West, Bradley & Cary Manuf'g Co.* 111 U. S. 490, S. C. 4 Sup. Ct. Rep. 593, was founded. Eagleton, however, appears to have done nothing in this direction to such springs but to japan them and bake on the japan at a degree of heat lower than will produce good results in restoring strength and elasticity; and neither he, nor those who followed up his application, appear to have known of the benefits of the subjection of the strained spring to heat until after Cary's invention. What they knew and did would not bring the knowledge of Cary's discovery to others any more than to themselves, nor affect the validity of his patent. *Colgate* v. *W. U.*

*Tel. Co.* 15 Blatchf. 365; *Tilghman* v. *Proctor*, 102 U. S. 707.   The patentee was the meritorious discoverer of this application and effect of the process, and his patent for it appears to be valid.

The defendants use Cary's process for the same purpose, and with the same result, although they use a higher degree of heat.   The patent does not limit the process to any precise heat.   The substance of the patented invention is taken, and the use of more heat does not make the process different in principle from the patented process.   *Tilghman* v. *Proctor*, *supra*.   The extent of the infringement is not important now.   Any infringement entitles the orator to a decree.

Let a decree be entered for an injunction and account according to the prayer of the bill, with costs.