CARY and another *v.* DOMESTIC SPRING-BED Co.[1]

*(Circuit Court, D. New Jersey.* July 28, 1885.)

1. PATENTS FOR INVENTIONS—PRELIMINARY INJUNCTION.
    Where a patent had been sustained after long and ably contested litigation, and against all the defenses ordinarily set up in patent cases, and such decision had been followed by another court, *held,* on an application for a preliminary injunction, that the question of the validity of the patent was hardly open.
2. SAME.
    In such a case, and where the patent has only a short time to run, the owners are entitled to be protected in their monopoly until the defendants are able to show that the former decisions sustaining the validity of the patent were wrong.

In Equity.
*Samuel A. Duncan* and *Wm. E. Witter,* for the motion.
*Collins & Corbin, contra.*

NIXON, J. This is an application for a preliminary injunction, and under the well-established rules and principles governing such applications in this circuit, the motion must prevail. The patent on which the suit is brought is for an "improvement in modes of tempering springs." The invention relates to spiral springs in a conical form, used in upholstering sofas, chairs, and in bed bottoms, and consists in subjecting the springs to a tempering process after they have been completed in the usual manner, whereby their strength and elasticity are greatly increased. In the specifications of the patent the inventor (Cary) states that the ordinary furniture spring is made of hard-drawn wire, coiled and forced to the proper shape, and when this is done the spring is considered finished, without having been subjected to any tempering process other than what is incidental to the drawing of the wire. The metal being greatly condensed and hardened in the process of drawing the wire, a good degree of elasticity is given the wire thereby; but in bending and coiling the wire into the proper shape the metal is unavoidably weakened. The outer portion of the wire coil is drawn or stretched, while the inner portion is crushed or shortened. When straight bars of wire are

[1]Edited by Charles C. Linthicum, Esq., of the Chicago bar.

subjected to the bending process, the stretching or drawing of the outer, and crushing of the inner, portions are inevitable results. This greatly reduces the elasticity, strength, and durability of the spring. The patentee claims that he has discovered a method of restoring the wire, after being bent or formed into springs, to its normal condition. He does it by subjecting the spring to a degree of heat known as "spring-temper heat," which is about 600 degrees, more or less, for about eight minutes. He regards this temperature as sufficient to so far relax or produce a complete homogeneity of the metal of the spring as to add from 20 to 30 per cent. to the value of the spring consequent on its increased powers of resistance.

The validity of the complainants' patent was incidentally involved, and perhaps to a limited extent considered, by the supreme court in *Eagleton Manuf'g Co.* v. *Cary Manuf'g Co.*, 111 U. S. 490, S. C. 4 Sup. Ct. Rep. 593, wherein the question of the priority of invention between Eagleton and Cary was litigated. Nothing, however, was definitely settled in that case except that the Eagleton patent was void. But in 1879 a suit for infringement was brought by the owners of the Cary patent, in the circuit court of the United States for the southern district of New York, against Raphael H. Wolff and others, which was long and ably contested, and in which all the defenses ordinarily set up in patent causes seem to have been involved. Judge WHEELER, before whom the case was tried, sustained the patent against all the defenses. He has been followed by Judge ACHESON in this circuit, (*Cary* v. *Lovell Manuf'g Co.*, 24 Fed. Rep. 141,) and the question of its validity is hardly open on an application for a preliminary injunction.

The patent is *prima facie* valid. It has been upheld on final hearing after expensive and protracted litigation. It will expire in less than three years, and in the mean time the owners are entitled to be protected in their monopoly until the defendants are able to show that the learned judges who have sustained its validity were mistaken in their judgment.

I express no opinion on the merits, but, at this stage of the proceedings, order the injunction.