## PATENT-BUTTON CO. v. PILCHER.

(Circuit Court, D. Kentucky. June 3, 1899.)

1. PATENTS—CONSTRUCTION AND INFRINGEMENT—BUTTONS.
   The Williams & Lade patent, No. 439,920, for an improvement in buttons, analyzed, construed, and *held* not infringed.

2. SAME—AMENDMENT TO ANSWER.
   Where written instruments in the nature of an assignment were filed in the case subsequent to the original answer, and long before the cause was submitted, *held*, that it was proper to allow an amendment to the answer to conform to these proofs.

George Cook and W. B. Dixon, for complainant.
L. N. Dembitz, for defendant.

EVANS, District Judge. The complainant's patentees, Williams & Lade, made application for a patent on buttons some time in the early part of 1890, and filed with their application drawings, specifications, and claims. In their application they made various claims, as will be seen from the file wrapper in evidence here, all of which were rejected by the examiners as being already met by anticipations. Subsequently, from time to time, they filed various amendments to their specifications and claims, to meet the objections of the examiners, all of which were successively rejected for the reason that they presented no novelties; and finally, on September 22, 1890, they filed an amendment, claiming as a novelty, and an improvement over the then known state of the art, the wedge of their button; stating the same to be the same length as the shank of the button, and that the small end of this wedge, when the buttons were fastened to the cloth, should be tightly compressed in the orifice in the plane of the base of the shank of the button, thus locking the two parts together, and thus retaining the two parts of the button rigidly in place against any strain. In their brief to the department, accompanying this last amendment, they state:

"Applicants' claims are now limited to a button in which the wedge is substantially the full length of the stud on the shank, thereby clearly distinguishing their button from Platt's; and it is because of this difference in construc-

tion that their button will resist any strain which can be exerted upon it, and is practicable for use upon garments. * * * Applicants' button can be readily removed * * * by applying a punch or tool to the inner end of the wedge through the orifice in the base of the shank, and can be applied to another garment."

Upon this last amendment a patent was granted. The specifications thus amended called for a button of the following construction, all of which was well known to the art at that time, except where herein specified in quotations as a new feature, by the use of the word "new": The front portion of the button to be composed of a cap and collet stamped from sheet metal; the collet provided with a central orifice, and the central portion of the collet surrounding said orifice depressed to form a tapering tubular socket, or without this depression, as desired. This cap and collet fastened together in a well-known manner, thus forming the head of the button. Within this head, loosely held, with its smaller end preferably projecting slightly below the orifice or tubular socket of the collet, its larger end being of such diameter as to prevent it from escaping through said orifice or socket of the collet, is a tapering wedge or plug, whose small end, thus projecting through the collet, is of slightly less diameter than the smaller end of the tube on the shank (presently to be described), whereby it is adapted to easily enter the latter when the two parts of the button are caused to approach each other. The length of said wedge corresponds substantially with the length of said tube on the shank, whereby, when the parts are pressed together, said wedge extends throughout the entire length of said stud, with its small end substantially flush with the rear side of the base of the shank, said base having a central perforation, forming a continuation of the bore of said stud, to receive said end. The rear portion or shank of the button is composed of a base, and a tapered split tube standing perpendicularly to the base. This tube may be cylindrical, instead of tapering, and may be unsplit, if desired. The button is applied by thrusting the shank through the garment, and the head or front portion then placed in juxtaposition to it, so that the tube of the shank will enter the orifice in the collet, and the wedge protruding through the collet will enter the tube of the shank, pass entirely through said tube, and become fastened in the orifice in the base of the shank.

The claim of the patentees, as finally made and allowed, is as follows:

"The button herein described, composed of a shank, the base of which has projecting therefrom a hollow split stud, and has therein a central orifice forming a continuation of the bore of said stud, a front portion composed of a cap and a collet, said collet being provided with a central orifice to receive the stud on the shank, and a wedge or plug loosely mounted within said front portion, with its small end projecting through the orifice in the collet, said wedge or plug being adapted to enter and expand the stud on the shank, and being of such length that, when the two parts of the button are pressed together, its small end will project into the orifice in the base of the shank, substantially as and for the purposes described" in the specifications.

Now, in the specifications it is said:

"The smaller end of said wedge or plug is of slightly less diameter than the smaller end of the tube * * * on the shank, whereby it is adapted to

easily enter the latter when the two parts of the button are caused to approach each other. The length of said wedge or plug corresponds substantially with that of the stud * * * on the shank, whereby when the said parts are pressed together * * * said wedge extends throughout the entire length of said stud, with its small end substantially flush with the rear side of [the] base [of the stud]; said base having a central perforation, forming a continuation of the bore of the stud, to receive said end."

### Again:

"The pressure, in practice, being continued until the small end of the wedge has been brought substantially flush with the rear side of the base * * * [of the stud] of the. shank. The wedge * * * being free to follow the movements of the tube * * * [of the shank], it is obvious that any attempt to separate the two parts of the button thus locked together will but bind the expanded portion of said tube * * * the more firmly between the wedge and the tapering wall of the socket of the collet."

### Again:

"In our button, on the contrary, the wedge extends throughout the entire length of the tube when the two are locked together, and the small end of the wedge is tightly compressed in the central orifice in the base of the shank."

Thus, it will be seen that the specifications and claim call for a wedge of a length sufficient to go entirely through the shank of the button when locked together, and that the small end of the wedge is then "to be tightly compressed in the central orifice in the base of the shank," and that that is the whole claim of the patentees, and all that was new or novel in their invention over the then known state of the art. It seems to me that such a construction is, as defendant's witness Stevens says, a mechanical impossibility, and that no one skilled in the art could construct such a button. Suppose the split hollow stud on the base of the shank is a perfect cylinder, and is not, as is preferred by the patentees, a tapering tube, with its small end furthest from the base of the shank, and the wedge is of the same length of the shank, and the small end of the wedge (for, being a wedge, it must have one small end and one larger end) is of slightly less diameter than the inner diameter of the cylindrical tube of the shank; when the wedge is forced through the stem so that its smaller end is flush with the orifice in the base of the shank, or, as otherwise stated, "with the rear side of the base of the stem," this small end of the wedge (the wedge being of the same length as the shank tube) could not by any possibility be tightly "compressed in the central orifice" of said base, because said orifice in the base of the shank is of the same diameter of the bore of the stem, which bore is larger than the small end of the wedge. There can be no question about this, because the patent reads for itself, and complainant's expert witness so explains the action of the wedge; and, in addition to this, complainant's patentees, at the time the patent was granted, so specified both in their claim and in their brief to the department. That was the novelty, and the sole novelty, patented by them, and it is a wholly impracticable and impossible construction. That they do not manufacture buttons in accordance with this specification, I think, is demonstrable from an examination of their manufactured exhibits. None of the features of complainant's buttons were new, except the length of the wedge. There were wedges then being

95 F.—31

placed in buttons of a shorter length, so that there can be no conflict, in my opinion, with their patent, unless the wedge is of substantially the length which they claim as their contrivance.   Now, the respondent's wedge is of no such length, but, rather, about the length of the wedge in the Platt patent,—as near as an ocular examination discloses,—or, perhaps, if anything, shorter.   Its function is not to enter the orifice at the base of the shank, and become wedged therein; and in practice it does not, and, I may add, neither does that of the complainant's.   But the complainant's expert witness Benjamin claims (and through him, the complainant itself) that the words "orifice in the base of the shank" should not be construed literally, but should include the whole portion of the shank, from the base of the splits in the tube to the rear side of the orifice in the base of the shank, and that within this distance the "jamming" or "tight compression" of the wedge takes place.   But, granting this for the sake of the argument (which, however, is entirely without the scope of the patent as stated), the defendant's button still does not infringe, for the function of his wedge, or "anvil," as he calls it, is not to enter that portion of the stem of the shank at all.   A glance at his patent will explain this.   His claim is that buttons constructed on the principle set forth in the Williams & Lade and previous patents (that is, with a tapering shank, extending from the collet and the tubular stem of the shank entering therein) do not hold the buttons in place rigidly, and that eventually they lose their hold, and, allowing side play, finally work out, and the button falls from the garment; and his novelty is to construct a straight socket at the collet end of the button, and a straight tubular shank on the stem, so large that it would not normally enter the straight socket of the collet by hand pressure.   In order to make it enter, he slits it and compresses its outer extremity, and, meeting his wedge or anvil within the button head, this compressed part of his tube is forced out to a normal diameter, and is rigidly compressed against a rigid socket in the collet of the button; and the function of the anvil or wedge is not to penetrate below the slit portion of the tubular stem.   Therefore, on the claim made by the complainant, there is not an infringement.   But in practice does the wedge or anvil of respondent's button penetrate below the slit portion of the stem of the shank?   It is claimed it does not, but, if it does, it could not be an infringement on complainant's device, because complainant's specifications and claim make no such claim, and are so specific and unequivocal, as to the use of the words "orifice in the base of the shank," that their patent, in consideration of the then state of the art, is not broad enough to cover such a claim.   As stated, they themselves are not making a button in accordance with their own specifications; and, as also stated, it cannot be done by any one skilled in the art.   I cannot see that there is an infringement of complainant's claim.

Complainant's patentees claim, also, that theirs is a detachable button; but this feature was not a new one, and no patent was granted therefor.

Respondent's button also shows, in addition to the features stated, two flanges,—the flange on the shank, consisting of the base of the

shank, and also a flange on the collet, or cylindrical tube or neck of collet. Between these flanges the cloth of the garment on which the button is used is held, and there is no such device included in the complainant's claim.

I can see no reason why the amendment to the answer should not be allowed to be filed. It pleads the effect of certain written instruments filed in the case subsequent to the original answer, and long before the case was submitted, and does not affect the facts in the case. It may be said to be an amendment to conform to the proof. There was no advantage in any way taken by the respondent; and the case, the proofs, and the facts shown would have been just the same had it been incorporated in the original answer. It does not otherwise add to the defenses.

The instruments of writing constitute an assignment, and, in legal effect, empower the assignee to sue in its own name, and it has a right to bring this suit.

Regarding the length of the wedge in complainant's button, it may be said that this feature does not appear in the original specifications of Williams & Lade, filed March 5, 1890, nor until their amendment of September 22, 1890. Then it appears for the first time. Under the authority of Railway Co. v. Sayles, 97 U. S. 564, and other subsequent cases, it would appear to be doubtful if a patent granted on an amendment of this kind, so different from the original claim, and filed several months afterwards, is valid, especially where the amendment is not sworn to by the applicant. See Eagleton Mfg. Co. v. West, Bradley & Carey Mfg. Co., 111 U. S. 490, 4 Sup. Ct. 593. But, assuming the patent to be valid, I think there has been no infringement. For the reasons indicated, the court is of opinion that the bill should be dismissed, with costs, and it is so ordered.