## JONES v. FREED–EISEMANN RADIO CORPORATION.

## SAME v. WALTHAL ELECTRIC CORPORATION.

### Nos. 29, 30.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Cavanagh & James, of New York City (Maxwell James, of New York City, of counsel), for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (Willis H. Taylor, Jr., of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellant sues for infringement of patents No. 1,658,804, claims 1, 2, 4, 5, 6, 7, 8, 9, 10, and 11, and No. 1,658,805, claims 1 to 16, inclusive. The patents were issued February 14, 1928, and relate to the neutralization of capacity coupling, in whole or in part, of vacuum tubes employed in the circuits of a radio receiver. They are claimed to be optional divisions of an original application filed December 15, 1922. Divisional application for No. 1,658,804 was filed September 21, 1926; No. 1,658,805 was filed March 15, 1927. They were not filed as a requirement of the Patent Office, and therefore are regarded as optional divisions.

The first of the patents in suit was not issued for the first divisional application, but on the second, as the first application was filed December 13, 1923, and resulted in patent No. 1,641,438, the specification of which is substantially identical with the original application of December 15, 1922. Before the application for the first patent in suit, No. 1,658,804, which was about three years and nine months after filing the parent application, the appellee had its neutrodyne radio set on the market for about three years and seven months. The second application, resulting in No. 1,658,805, was filed about four years and three months after the filing of the parent application, and four years after the appearance of the appellee's neutrodyne set on the market.

The appellee manufactures and sells its neutrodyne radio receiver which is charged with infringement of the patents in suit. It has a license under the Hazeltine neutrodyne patent, No. 1,533,858 and the Hazeltine Corporation, owner of that patent, at its own expense, is defending this suit.

The Hazeltine patent, No. 1,533,858 is for plate circuit neutralization in a radio receiver. We held it valid in Hazeltine Corp. v. Wildermuth, 34 F.(2d) 635, 640, and said it was brought forth in December, 1922, and that, after that date, plate circuit neutralization was used in all neutrodyne sets which were made, and "it was the first time that squeals and whistles were eliminated." The patents in suit were in interference with the Hazeltine patent in the Patent Office, and claims were allowed over Hazeltine for the degree of coupling obtained with the limitation to a coupling "substantially less than unity" and "less than unity" coupling.

On this appeal, appellant's counsel states that "the broad issue of plate circuit neutralization is not involved in this suit; and the Hazeltine patents No. 1,489,228 and 1,533,858 may be (and have been) here assumed or considered as prior art." And appellant contends that the essence of the inventions in suit is teaching a new interrelation between three coils, marked P, A, and S, to secure neutralization particularly as applied to tuned radio frequency receivers. The alleged invention, illustrated in Fig. 1 of the drawings, shows a neutralized tuned radio receiver, and wherein the tuned grid circuit comprises a tuning condenser 15 with an inductance coil or inductor 14, which coil may be coupled for energy reception to an inductance coil of an antenna circuit and wherein the plate or output circuit is provided with an external or output impedance 18 which comprises the primary of an air core transformer (coil P), and which is coupled to the secondary 22 (the secondary coil S) of the said transformer, the said secondary receiving at resonance the amplified energy for further amplification if desired, resonance being obtained by the condenser $15^a$. For controllably reducing or entirely eliminating the effect of a feed-back charge carried from the plate to the grid due to normally unshieldable capacity between the plate 13 and the grid 12 of the tube, the inventor provides means for either controlling or entirely eliminating the feed-back charge. In the explanations he refers to the transformer designs of the coils P, A, and S. He says that one manner of accomplishing the result is to make the potential created equal in phase and amplitude and opposite in sign to the potential on the plate, and to make the capacity connected to the grid preferably equal to the measured capacity between the plate and the grid. To these ends, the inventor provides additional impedance 23 (the auxiliary A) which comprises a coil wound in the same direction as the output impedance coil (primary P), and which has a number of turns equal to the number of turns in the winding 18 (primary P); the said additional impedance being connected to the neutralizing condenser (25), which in turn is connected with the grid end of the grid or

input circuit of the tube. This additional impedance (coil A), which is preferably closely coupled with the output impedance (coil P), is said to produce potential equal in phase and amplitude and opposite in sign to the potential on plate 13; these potentials being taken with reference to the filament potential.

The equal impedances P and A are not only shown as similarly or equally coupled to the secondary S, but are shown as uncoupled from each other, and, to overcome this unbalancing effect of a plate component of voltage in the plate coil P, he says he proposes "to minimize in a practical way any unbalance that results from the plate component of voltage in the plate circuit, the output impedance and the added impedance are closely coupled. * * *" The maximum points of potential difference in the controlled circuit are the opposite points of coils P and A, and the coupling, therefore, was one between these coils P and A to the power source. The power source to which these coils are thus coupled is the secondary coil S. Appellant says that he taught that, in addition to the two rules of separately and closely coupling the coils P and A to S, and of preferably closely coupling the coils P and A together, the coupling coefficients PS and AS should be equal. He claims to have accomplished the equation of the coupling coefficients PS and AS by symmetrically arranging the coils P and A with respect to the coil S as clearly depicted in Figs. 1 and 2 of the drawings and by winding coil A in the same direction as coil P, and by imparting to the coil A the number of turns equal to the number of turns in coil P. The result, he says, is that equalizing impedance A to coil P, both being symmetrically disposed with respect to and closely coupled to the coil S, creates a potential opposite to the potential on the plate 13 of the tube. Further, he claims that thus constructing a transformer design teaches it is sufficient if coils P and A are separately and closely coupled to the secondary S of the transformer; that the coils P and A should preferably be closely coupled to minimize any unbalance that results from the plate component of voltage in the plate circuit, and that the coupling coefficients PS and AS should be equal.

Appellant has not shown invention over Hazeltine's patent. In the Wildermuth Case we said:

"The first patent, No. 1,450,080, was for this unsymmetrical arrangement of closely coupled neutralized circuits generally, the maintenance of proper ratio of turns to capacity. The subject-matter of the second patent, No. 1,489,228, is the electric circuit arrangements for neutralizing grid plate capacity coupling of an audion characterized by a degree of close coupling substantially equal to unity. The subject-matter of the claims of the patent in suit [No. 1,533,858] is plate circuit neutralization." 34 F.(2d) 635, 639.

The learned District Judge, in a careful opinion 48 F.(2d) 300 has considered appellant's claims to an earlier conception of his alleged inventive thought and also the date of Hazeltine's experiments with a view of ascertaining his date of conception. After a very exhaustive study of the respective claims based upon a convincing record, he concluded, as we do, that Hazeltine was the first to accomplish all that is now claimed by appellant. The appellant's knowledge of plate circuit neutralization arrangement, embodied in the receiver said to infringe as well as appellant's transformer arrangement, came to him when Freed, president of the appellee, showed appellant his sketch of Hazeltine's plate circuit neutralization on December 10, 1922. Appellant says that the sketch (Exhibit A) was incomplete; but he also says that Freed told him on that date that he had seen a model apparatus embodying Hazeltine's circuit. Appellant admits that the use of the phrase "substantially less than unity" in conjunction with the word "close" is an attempt to distinguish the Hazeltine patent, and, when asked on cross-examination what he meant by a "coupling less than unity" as compared with a "coupling substantially less than unity," he answered: "To me they mean generally the same thing. I can see in specific cases, however, where there might be a question as to whether a coupling less than unity, measured by precise measurements, was substantially less or not." Much was made in the Patent Office, in the interference proceedings, of the use of the so-called air core transformer, but the Hazeltine patent, No. 1,533,858 (Fig. 5), shows air core transformers in a neutralized tuned radio frequency amplifier system. When questioned by the trial court, appellant admitted there was no difference between "closely coupled" and the amended form, intended to distinguish from Hazeltine, which included the expression, "with a coupling substantially less than unity." The Patent Office accorded Hazeltine the benefit of his filing date, December 28, 1920, which, as clearly pointed out in the opinion below, is two years prior to the date of appellant's

work, which he claimed to be in October, 1922. His earlier claims, dating back to 1917, have been amply disposed of in the reasons advanced in the opinion below.

The first patent in suit centers about the coupling relations between the coils primary, auxiliary, and secondary, designated as P, A, and S, and the second is about tuning. The patents to Schloemilch & Von Bronk, No. 1,087,892, and Alexanderson, No. 1,173,079, show that tuning was old in the single stage or in the multistage arrangement. Appellant admits this in his testimony. It was admitted that the neutrodyne receivers employed the arrangement of the Alexanderson patent, plus plate circuit neutralization. From this it is clear that there is no invention in tuning, as broadly claimed by the appellant in his second patent.

Hazeltine's patent, No. 1,489,228, discloses an arrangement wherein the coupling between the primary coil P and the neutralizing coil A is specified as substantially equal to unity, and Hazeltine's patent, No. 1,450,080, discloses an arrangement wherein the coils P and A are closely coupled. The neutrodyne receiver complained of as an infringement (Appellee's Exhibit 9) employs a coupling of 70%. It is conceded that unity of coupling is unobtainable. It is clear that Hazeltine from his earliest work to the date of his conception resulting in his patent No. 1,489,228, granted April 1, 1924, on an application filed December 28, 1920, was seeking to obtain relief from the squeals and whistles. He accomplished all that may be claimed for appellant's transformer design by his (Hazeltine's) plate circuit neutralization. In a disclosure of May 10, 1919, Hazeltine described what he found by saying:

"The invention consists in neutralizing the effect of this voltage on $L^1$ by connecting a neutralizing capacity $C^2$ to a neutralizing coil $L^2$ which is closely coupled magnetically with $L^1$. By adjusting $C^2$ relative to the number of turns on $L^2$, the magnetomotive force $N^2,I^2$ of this coil may be made equal and of opposite sense to the magnetomotive force $N^1,I^1$, of the coil L1."

Under date of July 14, 1919, Hazeltine forwarded to the Navy Department a draft patent specification which was substantially used, in almost the same form as the application of December 28, 1920, which resulted in the Hazeltine patents No. 1,489,228 and No. 1,533,858. This was pointed out in the Wildermuth Case (C. C. A.) 34 F.(2d) 635.

The disclosures of his patent show equality of coupling between PS and AS. Hazeltine's coils L1, L2, are equal and are very closely coupled. The specifications of his patent filed in August, 1919, point this out. If coils L1 and L2 are closely coupled, appellant admits they must be equally coupled to the secondary. The appellant admitted that the alleged infringing receiver is a stable device and does not oscillate, which indicates that, if separate coupling is employed, a very small error is corrected with respect to neutralization. If uncorrected, it would give rise to oscillations. In summation, therefore, it is clear that the phrase "less than unity coupling," or "substantially less than unity coupling," is no different from close coupling accomplished by Hazeltine. It may be that the appellant found he had to have closer coupling between coils P and A in order to obtain efficient operation. Appellant's Exhibit 36 shows that the coupling between the coils utilized in the model receiver, operated on December 7, 1922, was 75 to 80 per cent.; as employed by Hazeltine about December 8, 1922, it was 65 to 70 per cent. Hazeltine explains this as having no engineering significance, but it is to be noted that the coefficients of coupling between the coils P and A, and A and S, in the Hazeltine model (Exhibit W), constructed after a sketch of December 5, 1922, were, respectively, 75 to 80 per cent. and 70 to 75 per cent. This seems to be substantially equal as appellant explains.

The phrases "coupling less than unity" and "coupling substantially less than unity" made their first appearance in the optional divisional applications. They were in no way disclosed in previous applications. The conclusion reached below is inescapable that they were afterthoughts and a mere means to escape the Hazeltine prior art.

If these claims had a meaning which would enable them to read on the infringing device, the failure to claim the invention thus defined until more than four years after the neutrodyne receivers were placed on the market constitutes laches, and the imposed intervening rights of appellee would be sufficient to invalidate the patent. Eagleton Mfg. Co. v. West, Bradley & Carey Mfg. Co., 111 U. S. 490, 4 S. Ct. 593, 28 L. Ed. 493; Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.(2d) 823 (C. C. A. 2); Westinghouse Elec. Co. v. Jeffrey-De Witt Insulator Co., 22 F.(2d) 277 (C. C. A. 2). The record does not permit the appellant's maintaining that his parent application disclosed "coupling less than unity" and

"coupling substantially less than unity," nor that these expressions later used were a redefinition, in restricted terms, of what had been claimed originally in the applicant's application. Arnold v. Langmuir (Cust. & Pat. App.) 36 F.(2d) 834; Novadel Process Corp. v. J. R. Meyer & Co., 35 F.(2d) 697 (C. C. A. 2). In his earlier invention, appellant recommended close coupling, and in his first written record of his alleged invention, dated November 2, 1922, he recommended preferably strong coupling being employed, saying: "The two halves of the plate impedance are preferably strongly coupled together." This phrase pointed away from the present claim of coupling less than unity or substantially less than unity. Nor are we impressed with the argument of the appellant that Hazeltine taught unity coupling and "it is this that must be untaught before a tuned radio frequency receiver may be produced." The courts have exercised scrutiny of later applications such as these optional divisionals. Lopulco Systems, Inc., v. Bonnot Co., 24 F.(2d) 510 (C. C. A. 3).

Nor can the original claim of separate coupling, if given a broad interpretation, be said now to have disclosed what appellant invented. The belated claims of the divisional applications have nothing in the original specifications to rest upon and nothing to explain them. As we have said, the plate circuit neutralization of Hazeltine produced fully what is claimed by the appellant as his inventive thought.

Decree affirmed.