Fred GERHARDT and Bernard Werfel,
Plaintiffs,

v.

Kenneth KINNAIRD, d/b/a Kinnaird
Body Works, and Kinnaird Body
Works, Inc., Defendants.

No. 719.

United States District Court
E. D. Kentucky,
Covington Division.

May 16, 1958.

Truman Herron, Herbert Brinkman, Cincinnati, Ohio, Leon Boro, Fresno, Cal., for plaintiffs.

J. Warren Kinney, Jr., Cincinnati, Ohio, for defendants.

SWINFORD, District Judge.

This is an action for patent infringement brought under the provisions of 28 U.S.C.A. § 1338(a). The plaintiffs, Fred Gerhardt and Bernard Werfel, are residents of Fresno, California. Gerhardt is the inventor of record of United States Patent No. 2,596,478 dated May 13, 1952, and of Reissue Patent No. 23,848 dated July 6, 1954. By an assignment of record in the United States Patent Office the plaintiff, Werfel, became the owner of a one half interest in the original and reissue patent. The defendant, Kenneth Kinnaird, is an individual who, prior to January 1, 1956, did business in Bromley, Kentucky, under the name of Kinnaird Body Works. The co-defendant, Kinnaird Body Works, Inc., is a Kentucky corporation under a charter of January 1, 1956.

The defendant, Kenneth Kinnaird, was licensed by the plaintiffs under the patent from June 12, 1952, to February 5, 1955, when the plaintiffs canceled the existing license agreement on the ground that Kinnaird had defaulted in the payment of minimum royalties.

In this action it is alleged that the defendants, Kenneth Kinnaird and Kinnaird Body Works, Inc., have continually from February 5, 1955, are now and will continue to infringe claims 6–11 of Reissue Patent No. 23,848; that the beverage bodies manufactured by the defendants since February 5, 1955, have been in all respects essentially identical with those manufactured under license prior to that date; and that the infringement has been deliberate and willful. The plaintiffs pray for an injunction against infringement, for damages, costs, attorneys' fees and other equitable relief to which they may appear entitled.

The defendants file a general denial of the allegations of infringement and as further defenses plead affirmatively the invalidity of the patent because of lack of invention; non-infringement; the practice of fraud by the inventor on the patent office; carelessness on the part of the patent office in failing to discover inventions disclosing prior art; fraud upon the patent office in filing an application for the reissue patent by withholding information of the issue of a prior patent to Ostenberg, No. 2,167,848, directed to a pinch frame as disclosed, described and claimed in patentee's Claims 6–11 of the reissue patent; lack of inventive skill in Claims 6–11 of the Reissue Patent No. 23,848 which thereby made it invalid and void; and that there is no infringement because the defendants have acquired "intervening rights" under the express provisions of 35 U.S.C.A. § 252, enacted July 19, 1952.

The defendants further claim that they are entitled to recover damages on a counterclaim growing out of alleged practices of unfair competition practiced on them by the plaintiffs who, they say, communicated with certain of the defendants' customers and thereby caused them loss of sales from which they could have anticipated profits to the extent of $250,000.

The patent is concerned with a beverage body used on trucks of varying size and power for the transportation of a large number of wooden cases containing soft drinks such as Coca-Cola, Pepsi-Cola, 7 Up, orange drink and the like. These trucks carrying soft drinks are of common use throughout the nation and are seen by all of us many times in the course of a year's travel. Many of these trucks carry five or six tons and some of them more than that. The cases themselves are relatively light and fragile so that they have to be securely held on the truck but at the same time made readily accessible to the driver, because in the routine delivery of the soft drink cases and the subsequent picking up of

the empty containers, the driver is required to remove the cases from a stack standing on the bottom of the truck bed and piled up to the peak.

These beverage bodies are a specialty and like a great many types of vehicle bodies are not ordinarily manufactured in quantity production by large truck manufacturers such as International, General Motors, etc. The White Company has a standard beverage body which it manufactures according to an established design but it is represented to the court that the White Company is the only large truck manufacturer with such a department. The beverage bodies are in a general sense manufactured by small plants such as the plaintiffs' in Fresno, California and the defendants' in northern Kentucky who make a specialty of this particular truck body. The demand for a truck body such as the one involved is filled for a customer by taking an ordinary flat bed truck which is either furnished by the manufacturer or by his customer and converting it into the beverage carrying type truck.

The idea of carrying these bottled goods in stacks on top of trucks is not novel. The usual and customary plan prior to 1952 was to take a truck and change the frame of the trailer by dropping or lowering the existing side rails by sawing them off and piecing them together at a point beyond and below the cab. This is best portrayed by the Defendants' Exhibit I which shows the dropped frame of the truck on which is placed the stepdown beverage body evidenced by Defendants' Exhibit J.

The patent in suit bears the title "Vehicle Body for Transporting Stacked Articles". The invention of this article was designed as an improvement over prior constructions by providing a body to carry stacked articles adapted and constructed to fit on a truck frame of what is known and evidenced by the exhibits and models as a pinch frame construction. A truck with the pinch frame construction is best evidenced in this record by the defendants' model marked Exhibit B. In this we see that the con-ventional frame is cut in such a way as to produce a dropped effect immediately behind the cab (marked on the model 120), to bring closer together or narrow the longitudinal frames and attaching them both before and aft to the conventional frame immediately over the axle. The part of the frame remaining conventional is marked on the model Exhibit B as 18. The longitudinal frames which are narrowed immediately back of the cab are marked 200. The rear longitudinal frames attached to the conventional frame 18 are marked 100.

The advantage, as claimed by the patent, is that the panels which support the cases are enabled by this pinch frame construction to hang over and fall substantially below the bottom of the frame. The result is that with equal capacity the top row of cases is much lower than it would be in either a deck type construction or in a drop frame construction. The patentee claims that this is the only type of construction in which the floor is below the bottom of the frame which gives decided and numerous advantages. Among these advantages the court's attention is called to the fact that it makes the handling of the cases easier, the weight is centered much lower so that the truck holds the road better and the center of gravity is lower. It is further urged that this type of construction is a great deal simpler and cheaper than a drop frame and that it also provides a much stronger and more secure vehicle.

The defendant, Kenneth Kinnaird, communicated with the plaintiffs by telephone. This was the beginning of negotiations and, so far as the record goes, acquaintanceship between these parties. The defendant, Kinnaird, went to California and for the sum of $10,000 paid to them by Kinnaird, the plaintiffs entered into a license agreement which gave Kinnaird exclusive rights under the patent in a large number of mid-western states, together with the right to grant subleases in the territory. Certain royalties were provided in this written agreement. In the month of August 1952, Kinnaird again went to California

862

and presented to the plaintiffs and their attorney a letter of August 11, 1952, to Kinnaird Body Works from his patent attorney, Mr. J. Warren Kinney, of Cincinnati. This letter is identified in the record as Defendants' Exhibt F.

In view of this letter, on this trip to California, Mr. Kinnaird asked for a return of his $10,000 on the ground that in the opinion of his attorney, which was then his opinion, the license agreement was of little value since the patent on which it was based was invalid and not subject to infringement. Discussion was had and finally a new agreement was entered into between the plaintiffs and the defendant, Kinnaird, by the terms of which the $10,000 was not returned but Mr. Kinnaird was given an increased territory.

As a result of this incident, Mr. Kinney's letter and opinion, it was determined that the patentee should make application for a reissue patent. The employed patent attorneys of the plaintiffs were impressed by the suggestions contained in the Kinney letter and advised that steps be taken to file the application for reissue in order that the patent might be strengthened.

Immediately after the time the defendant, Kinnaird, acquired by agreement the right to manufacture the item under United States Patent No. 2,596,478, issued on May 13, 1952, he proceeded to make a radical change in his business and to subject primarily his thinking, energy and capital to the building and sale of the frame and body which he thought the patent protected. Between this time and July 6, 1954, when the Reissue Patent No. 23,848 was issued, it must be concluded that the manufacture, use and sale was the result of substantial preparation which took place before the grant of the reissue.

The defendant, Kinnaird, made quite a success of the manufacture and sale of the stacked carrying body and the pinch frame construction on which it rests. He expended large sums of money and much time and effort in advertising the product in his territory. Other concerns began to manufacture the product and Kinnaird complained to the plaintiffs that the license was being undermined by these other manufacturers and the failure of the plaintiffs to protect their patent rights. Friction resulted from these complaints and in April of 1955 final notice of the termination of the license was given by the plaintiffs to the defendants.

In addition to the license granted to Mr. Kinnaird, the plaintiffs have granted licenses to body builders in St. Louis, New England and Seattle, Washington. Their own manufacture under the patent has been very substantial. It is represented to the court that the plaintiffs know of no unlicensed manufacture of the construction shown in the patent at the time of trial with the exception of the defendants.

■ The court must first consider the defense of invalidity. Since the decision of the Supreme Court in the case of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162, it seems to me that it is practically impossible to claim invention of an article which is made up of known old elements. The so called new combination theory in patent law has in my mind been seriously restricted. Without meaning criticism of the court, if the patented article in the Supermarket case was not invention within the meaning of the new combination of old elements rule, it is difficult for me to conceive a claimed invention to which that rule would apply. This court is bound by the rule that the mere combination of old parts or elements which, in combination, perform or produce no new or different function or operation than that theretofore performed or produced, is not patentable invention. The patentee must add to the total stock of knowledge and not merely bring together segments of prior art.

■ There is nothing new in any of the mechanism set forth in the patent in suit. The combination of known elements has produced a most useful and,

so far as this record goes, hitherto unpracticed manner of loading and unloading cartons of bottled goods. As the Court well said, the concept of invention is inherently elusive when applied to combination of old elements. That is especially true in dealing with mechanical devices rather than claims involved in chemistry or electronics. It is not difficult to say and find as a fact that the claims herè are "wanting in any unusual or surprising consequences" from the unification of the elements used, but reasonable to find from the record, after scrutinizing the combination of united elements old in mechanics, that the patent has added to the sum of useful knowledge.

In the recent case of L. M. Leathers' Sons v. Goldman, 6 Cir., 252 F.2d 188, 191, the court cited Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, and held that the patent involved was invalid for lack of invention because of anticipation by prior art. Judge Miller in the opinion pointed out that a patent may not be obtained "if the differences between the subject sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

■■ In the light of these rules of law, which it must be conceded are difficult of application in the case at bar and similar cases, the court would be justified in declaring the reissue patent invalid. However, since the rights of the parties may be determined on the basis of infringement and estoppel by reason of intervening rights, it is my ruling that the validity of the patent should be upheld. An interpretation that saves rather than destroys a patent is preferred to one that nullifies and the court should ordinarily adopt a construction which is favorable to the patentee. A patent shall be presumed valid. 35 U.S.C.A. § 282; Keystone Mfg. Co. v. Adams, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Colgate-Palmolive Company v. Carter Products, Inc., 4 Cir., 230 F.2d 855, certiorari denied 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541; 40 Am.Jur. 122 (p. 614).

■ This case falls squarely within the rule laid down by the Court of Appeals for the Sixth Circuit in Ashland Fire Brick Co. v. General Refractories Co., 27 F.2d 744. I do not see that the Act of July 19, 1952, amending the provisions of 35 U.S.C.A. § 252 abolishes the principle laid down in that case. On the contrary, it would seem to me, the amendment to the patent law as set forth in this Act accepted the statements contained in the opinion and emphasized the fact that the matter of intervening rights was an equitable defense. Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204.

■ The plaintiffs are asking the court to invoke its extraordinary powers of injunction and deny the defendants the right to manufacture and sell an item of trade on which they had no monopoly prior to the reissue of July 6, 1954. The instant case adapts itself peculiarly to the language of the Act to the effect that the court may provide for the continued manufacture, use or sale of the item of which substantial preparation was made before the grant of the reissue to the extent and under such terms as the court deems equitable for the protection of investments or business commenced before the grant of the reissue. While it is true, bolstering of a claim by a reissue patent relates back to the date of the original application, generally speaking where the item does not infringe any claim of the original patent, the original infringer should be entitled to continue the use of the accused machine even though there might be otherwise clear evidence of an infringement of the new or amended claims of the reissued patent. Southern Saw Service, Inc., v. Pittsburgh-Erie Saw Corp., 5 Cir., 239 F.2d 339, certiorari denied 353 U.S. 964, 77 S.Ct. 1047, 1 L. Ed.2d 914.

The purpose of the amendment is most salutary. It enables the judge sitting in equity in a patent case to protect the rights of the manufacturer of the accused article without reversing the Commissioner of the Patent Office and declaring the patent invalid. Judge Denison's opinion in Ashland Fire Brick Co. v. General Refractories Co., supra, is excellent. It invades a field hitherto lacking in clarity of statutory or judicial determination. It reaffirms the importance of a growth in the law by a judicial pronouncement in its finest and most appropriate sense.

The right to a reissue is exceptional and is given only to those who come clearly within the exception. The creation of a monopoly should be with caution. At the same time justice requires that those of inventive genius should have protection for a reasonable time to enjoy the fruits of their ingenuity. Nevertheless, it must affirmatively appear in the case of a reissue patent, not only that the state of the art permitted a broader claim, but that the failure to get it was solely due to inadvertence. As is well stated in Ashland Fire Brick Co. v. General Refractories Co., supra, there being no presumption that a patent can be reissued, and the special cases where it may be done being relatively few, it does not seem that the public, acting on the faith of things as they are, should carry the burden of a change it has no reason to expect. A competitor, observing that the patent is limited to specific features which he does not care to use, may naturally assume that the limitation was either intentional, or necessary, or both.

The claims of the original patent were necessarily limited as to form of the frame and chassis and their relation to each other. After the issue of the original patent, and with knowledge and appreciation of its limited character and indeed being governed by the advice of patent counsel, the defendants built a non-infringing item. Before the reissue application was filed the defendants employed additional workmen at a substantial expense. They had widely advertised and spent money and time to put the truck and trailer body for transporting stacked articles into commercial use on a large scale. They had sold this product extensively and had practically converted their entire business enterprise to the production and sale of the allegedly infringing item. As the court in the case of Ashland Fire Brick Co. v. General Refractories Co.; supra, applied the theory of equitable estoppel to support a private intervening right in the nature of a license as against a valid reissue, I believe that equity in the present case demands that this court apply the same reasoning in the case at bar.

The right to claim the benefits of a monopoly for a period of years, as guaranteed by the laws committing the government to the protection of the patentee, impose upon those claiming such right the duty of a strict compliance with the statutory requirements. The application for a patent must conform in all respects to the requirements of the law or the patent granted thereon will be void. Eagleton Mfg. Co. v. West, Bradley & Carey Mfg. Co., 111 U.S. 490, 4 S.Ct. 593, 28 L.Ed. 493.

When the patent is once granted by the patent office it is presumed in law that the article patented discloses inventive genius or as said in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58, "must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain." However, the question of the validity of a patent is a question of law. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. The applicant for this monopoly is engaging in serious business when he affirms his claim to genius and must be very specific in the description of his alleged invention and show great detail in setting forth the claims on which he relies. When the patentee has once declared himself he is bound by the claims and drawings set forth in the application

unless he can bring himself within the provisions of 35 U.S.C.A. § 251 which provides for the reissue of defective patents. In order for the patentee to be entitled to a reissue it must appear that the application for reissue contains no new matter and is made only because of *error* in the original application and is without any deceptive intention. No reissue patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the date of the original patent. A reissue can be granted only where there is evidence that the new claims were made or brought about by accident, inadvertence, or mistake. The following quotation is taken from Union Switch & Signal Co. v. Louisville Frog, etc., Co., 6 Cir., 73 F.2d 550, 552:

> "In Peoria Target Co. v. Cleveland Target Co., 6 Cir., 58 F. 227, 239, the court said: 'Again, if an examination of the patent-office record discloses that there was no evidence before the commissioner of accident, inadvertence, or mistake, such as to warrant him in reissuing the patent, or that there was record evidence, of a conclusive character, showing that there could have been no accident, inadvertence, or mistake, the supreme court has not hesitated to hold a reissue void. This is manifest from an examination of the decisions of that court.'"

▮▮ There is grave doubt in the mind of this court that an application for a reissue patent would ever have been made by the patentee had it not been for the letter of August 11, 1952, addressed to the Kinnaird Body Works by J. Warren Kinney, Jr., and which is filed in the record as Defendant's Exhibit F. In the light of the whole record it is not an unreasonable deduction that the application was not so much to correct an "error" in the original application but to inject an item which was wholly absent in the original patent; an item which set forth an invention otherwise entirely lacking.

If this court cannot apply the equitable remedy outlined in Ashland Fire Brick Co. v. General Refractories Co., supra, it would feel compelled to invalidate the patent on the ground of fraud practiced upon the patent Commissioner in making the claim for the reissue patent or declaring the patent void for lack of invention under Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra.

The equities on both sides of this case ask for the withholding of so harsh a remedy. Both the plaintiffs and defendants have large investments of time, effort and money resting on the authenticity of this patent. The character of the article is such that a monopoly in its production by the patentee, subject to a license granted by a judgment of this court to the defendants, cannot seriously affect the public.

▮▮ The plaintiffs have at all times acted in good faith in their dealings with the defendants, the customers and prospective customers of the defendants. The proof is not sufficient to establish the fact that the defendants have suffered any damage as a result of any of the activities of the plaintiffs and the defendants have not sustained the burden of proof to justify a recovery on the counterclaim.

▮▮ It is the opinion of the court that the validity of the patent should be sustained but that no injunction should be granted as asked in the prayer of the complaint. It is further the opinion of the court that the defendants should be permitted to continue to manufacture and sell the article which is the subject of this action but that they should be enjoined from issuing any subleases or privileges to any other concern or individual.